SUSAN CALHOUN ET AL. v. A. G. BURTON ET AL.

(Case No. 1863.)

1. LIMITATIONS — FRAUD.— Undiscovered fraud will prevent the running of the statute of limitations, provided the failure to sooner discover it was not caused by the want of proper diligence of the party who asserts the existence of the fraud. Citing Munson *v.* Hallowell, 26 Tex., 475; Anding *v.* Perkins, 29 Tex., 348; Bremond *v.* McLean, 45 Tex., 10; Kuhlman *v.* Baker, 50 Tex., 630; Alston *v.* Richardson, 51 Tex., 6.

2. FRAUD — FRAUDULENT CONVEYANCE — LACHES.— Creditors of an estate, who presented their claims for allowance in due time, filed their bill to set aside for fraud a conveyance of land made by the intestate, of real estate, six days before his death, on a consideration, as expressed in the deed, which

was inadequate, and which land was by the vendee conveyed to the heirs of the decedent, two days after the decedent died, by deed in which no valuable consideration was expressed. The suit attacking the conveyance for fraud was filed more than five years after letters of administration issued. It was alleged that the two conveyances were really one transaction, the purpose of which was to vest title in the heirs, and defraud creditors. The property conveyed constituted the bulk of the estate, but the inventory described enough other property apparently to discharge the claims of creditors against the estate. The estate proved insolvent. In view of the foregoing and other facts stated in the opinion, *held:*

(1) The creditors, knowing that the heirs had taken possession of and occupied the land under their deed, and being chargeable with notice of the contents of both deeds through their registration, were chargeable with laches in not sooner attacking the conveyances.

(2) The fact that there remained apparently enough other property to satisfy plaintiffs' claims, the amount realized on which was so small as to leave the estate insolvent, did not stop the running of the statute of limitations in favor of the heirs holding under deeds duly recorded, or excuse plaintiffs for not sooner seeking an enforcement of their equities.

(3) It was the duty of the plaintiffs to investigate for themselves whether the assets being administered were sufficient to satisfy their claims, and if necessary, to examine the titles thereto. If, on such examination, the insolvency of the estate had been discovered, it would have been the duty of creditors, believing that a fraudulent conveyance had been made by the deceased, to their prejudice, to act with promptness to subject the property to their claims.

(4) The fact, known to a creditor, that a debtor had, only a few days before his death, made a voluntary conveyance, or one upon grossly inadequate consideration, of the bulk of his property, should have put creditors on inquiry on the sufficiency of the remaining property to satisfy their claims.

(5) The discovery of the insolvency of the estate, five years after administration began, could not excuse the plaintiffs for not sooner suing.

3. THREE YEARS' STATUTE OF LIMITATIONS — FACT CASE. — See the opinion in this case for facts under which it was error not to give in charge the three years' statute of limitations.

APPEAL from Anderson. Tried below before the Hon. F. A. Williams.

The opinion states the facts.

*Thos. B. Greenwood,* for appellants, on the issues discussed in the opinion, cited: Dunn v. Dunn, 82 Ind., 43; Rose v. Colter, 76 Ind., 590; Evans v. Hamilton, 56 Ind., 34; Sherman v. Hogland, 54 Ind., 578; Pence v. Croan, 51 Ind., 336; Jackson v. Post, 15 Wend. (N. Y.), 588; Phillips v. Wooster, 36 N. Y., 412; Bank of U. S. v. Houseman, 6 Paige (N. Y.), 526; Fox v. Moyer, 54 N. Y., 125; Van Wyck v. Seward, 6 Paige (N. Y.), 62; Jackson v. Miner, 101 Ill., 554; Seward v. Jackson, 8 Cow., 455, 456; Stewart v. Rogers, 25 Ia., 395; Gidley v. Watson, 53 Ill., 193; Wenchester v. Charter, 97 Mass., 149;

Opinion of the court.

R. S., arts. 3192, 3196, 3207; Towns *v.* Harris, 13 Tex., 516; Reynolds *v.* Lansford, 16 Tex., 291; Compton *v.* Perry, 23 Tex., 414; Martel *v.* Somers, 26 Tex., 551; Belt *v.* Raguet, 27 Tex., 471–481; Pearson *v.* Burditt, 26 Tex., 172; Charle *v.* Saffold, 13 Tex., 95; League *v.* Rogan, 59 Tex., 427.

*Gammage & Gregg,* for appellees, cited: Weisiger *v.* Chisholm, 28 Tex., 780; Layton *v.* Hall, 25 Tex., 204; Kelly *v.* Madden, 26 Tex., 48; Able *v.* Lee, 6 Tex., 427; Woods *v.* Chambers, 20 Tex., 247; R. S., art. 2465; Belt *v.* Raguet, 27 Tex., 471; 4 Day (Conn.), 284; Beach *v.* Catlin, 4 Am. Dec., 221.

STAYTON, ASSOCIATE JUSTICE.— Many questions are presented by the assignments of error and brief of counsel in this case which in the view taken of the case it will not be necessary to consider.

The controlling question in the case arises upon the following facts:

Jesse Calhoun died on January 17, 1878, and on March 20, of the same year, administration was taken out on his estate, since which time the estate has been in course of administration.

All of the appellees probated claims against his estate prior to February 4, 1879, except one, whose claim was probated May 20, 1879, and on April 12, 1884, they brought this action against Susan Calhoun, Eugenia Aycock, her husband, and E. C. Horn, who was then the administrator of the estate of Jesse Calhoun, to have declared subject to sale, to satisfy their claims, a tract of land conveyed to Sarah A. Ledbetter by Jesse Calhoun on January 11, 1878, which was by Miss Ledbetter conveyed to Susan Calhoun and Eugenia Aycock on February 19, 1878, upon the ground that the conveyance from Calhoun to Miss Ledbetter was voluntary, and made with intent to defraud his creditors.

The deed to Miss Ledbetter purported to be upon valuable consideration, was executed on the 11th of January, 1878, and on the same day recorded.

The deed from Miss Ledbetter to Susan Calhoun and Eugenia Aycock did not purport to be upon valuable consideration, was executed February 19, 1878, and recorded on the 25th of the same month, and under these deeds they have been in the continuous and adverse possession of the land since sometime in the month of February, 1878, during which time they have paid the taxes on six hundred acres of the tract, which contained about eight hundred acres.

The petition alleges that the conveyance made to Miss Led-

better, and the conveyance made by her to Susan Calhoun and Eugenia Aycock, were without valuable consideration, and that the two conveyances were but one transaction, through which the parties to them intended to vest title to the property in Mrs. Calhoun and Mrs. Aycock, who were the heirs of Jesse Calhoun, with intent upon the part of all to defraud his creditors.

It further alleged that the land so conveyed constituted the bulk of the estate of Calhoun, and that it was of the value of $15,000, and the proof shows that the land was worth about $8,000; the petition, however, does not negative the fact that the plaintiffs had knowledge, at the time the administration began, of all the facts which they allege to be true in these respects.

They also allege that the inventories of the estate, filed from time to time by the different administrators of the estate, none of which embraced the property in controversy, showed property belonging to the estate appraised at about $5,000, besides claims on various persons amounting to about $8,000, which were thought to be of but little value, and that after the sale of a few tracts of land of but little value "the bulk of the estate remained on hand until the month of May, 1883, and that during said month and subsequent thereto the administrator of said estate has sold off and disposed of all of said estate, and that said property, by reason of defective titles and stringency in money market at the times of sales, and from other causes, sold for mere nominal prices, and that all of said property which was inventoried at about $5,000 did not sell for more than enough to pay the costs of said administration, and that said estate is now hopelessly insolvent and will not pay off the debts of these plaintiffs."

"That these plaintiffs, seeing the amounts at which the property of said estate was inventoried, and not knowing that the titles to said property were doubtful up to the time of the sale of said property, supposed there would be ample property belonging to said estate to pay off their debts in full, and up to said time said estate appeared to be solvent."

The petition further alleged that Miss Ledbetter, Susan Calhoun and Eugenia Aycock knew that the title to the property inventoried was doubtful, but there was no proof whatever of such knowledge on their part; in fact, the proof offered on the trial was wholly insufficient to show what the state of the title to the property inventoried was.

There is no averment of any diligence used by the plaintiffs to ascertain the true state of the title to the property inventoried, nor

of concealment or attempt at concealment, by the defendants, of any fact of which they had knowledge or means of knowledge other than had the plaintiffs, which would have thrown any light upon the true condition of the estate as to solvency or insolvency.

The defendants, with other defenses, pleaded the bar of the statutes of limitation of three and five years, and on the trial proved a regular chain of title to themselves from the sovereignty of the soil, and to these pleas there was no replication.

The court gave no charges presenting these issues to the jury, under which they might, by a general finding, have determined the case in favor of the defendants; but, in this respect, submitted special issues, and under those which related to the different periods of limitation pleaded, the jury, in effect, found that the defendants had the possession necessary to bar the claim of the plaintiffs, if such defense could be sustained under the facts of the case; but the first issue, which related to limitation arising from three years' possession under title from the government, was defective, in that the charge did not embrace all the facts necessary to sustain such a defense.

The jury found, under the general charge given, that the conveyances under which the defendants claim were void, and a judgment was entered declaring the land, less two hundred acres, the homestead interest of Calhoun, subject to sale, in due course of administration, for the payment of the claims of the several plaintiffs; and the court overruled a motion to enter judgment in favor of defendants on the findings upon the special issues.

The defendants asked the following instructions, which the court refused to give:

"1st. If the jury believe from the evidence that the defendants have had the adverse and exclusive possession of the land in controversy for three years next prior to this suit, claiming the same under a regular chain of title, you will find for the defendants; and the court charges you that this suit was brought on the 12th day of April, 1884; and that the grant from Coahuila and Texas to Samuel G. Wells; 2d. Wells and wife's deed to Moses Cox; 3d. Cox's deed to John Calhoun; 4th. Last will of John Calhoun to Jesse Calhoun; 5th. Deed from Jesse Calhoun to S. A. Ledbetter; and 6th. Deed of S. A. Ledbetter to Susan and Eugene Calhoun,— constitute a chain of title from the government to the defendants.

"2d. The jury are instructed that if they find from the evidence that the defendants have been adversely occupying, using, enjoying and cultivating the said land for five years prior to the 12th day of

April, 1884, and paying the taxes thereon to the government under a deed or deeds duly registered, you will find for the defendants."

1st. "That a creditor seeking equitable relief against a deed of conveyance to land, made by his debtor, is chargeable with laches from the time it was or ought to have been discovered, and if the jury find from the evidence in this case that the deeds under which the defendants claim were recorded soon after their execution, this would be constructive notice to the plaintiffs of their execution, from the date of their record, and if the plaintiffs allowed defendants to occupy said lands for three years prior to the bringing of this suit, under a regular chain of title from the government, and the claims of the plaintiffs had each been approved by the county judge for three years prior to this suit, this suit having been instituted on April 12, 1884, you are then instructed that such laches bars the plaintiffs, and they cannot recover, and you will find for the defendant."

2d. The jury are further instructed that if they find from the evidence that deed from S. A. Ledbetter to the defendants was recorded for more than five years prior to the bringing of this suit in Anderson county clerk's office, and that the defendants have occupied, used or cultivated said land, since the record of said deed, for a period of five years prior to April 12, 1884, and that they paid the taxes to the government, and that the claims of any or all of said plaintiffs had been approved for five years prior to the 12th day of April, 1884, then such of said claims as had been approved for five years prior to said 12th day of April, 1884, cannot be the basis of a recovery as to the creditors holding such claims, and as against such, you will find for the defendants, regardless of what you may believe as to the issue of fraud in the case."

This ruling of the court is assigned as error.

The inquiry which arises under this state of facts is: Were there facts stated or proved which can take the cause of action without the bar of the statute? If not, under the uncontroverted facts the action was barred, and the two instructions relating to three years' possession should have been given.

Whatever doubts may have existed theretofore, since the case of Munson v. Hallowell, 26 Tex., 475, was decided, it has been the law of this court that undiscovered fraud will prevent the running of the statutes of limitation, subject, however, to the qualification that the failure to discover the fraud must not be attributable to the want of exercise of proper diligence by the party asserting it.

This qualification is well sustained by the former rulings of this court, as is it by the great current of authority English and Ameri-

can. Smith v. Fly, 24 Tex., 345; Anding v. Perkins, 29 Tex., 348; Bremond v. McLean, 45 Tex., 10; Kuhlman v. Baker, 50 Tex., 633; Ransome v. Bearden, 50 Tex., 127; Alston v. Richardson, 51 Tex., 6.

Now, if it be admitted that the deed from Jesse Calhoun to Miss Ledbetter was without valuable consideration and made with intent to defraud his creditors, a matter about which, under the proof, there may be great doubt, the inquiry arises whether the plaintiffs had knowledge of such facts, or whether they, by the exercise of proper diligence, could have discovered the fraud at an earlier period.

That they knew of the conveyance, as did they of the conveyance made by Miss Ledbetter to Susan Calhoun and Eugenia Aycock, through the record of the deeds as well as by the continuous adverse possession of the land by the appellants, cannot be denied; and they do not deny in their pleadings that they knew that these deeds were made without valuable consideration; but the inference to be drawn from their pleadings is, that, knowing those facts, they did not know that the conveyance was fraudulent, for the reason that the inventories of the estate showed that there remained, after the conveyance to Miss Ledbetter, in the hands of Calhoun, a sufficient amount of property to satisfy his debts, and that unless this was not true the conveyance was not fraudulent.

It would seem that the mere knowledge that a debtor, but a short time before his death, had made a voluntary conveyance, or a conveyance upon grossly inadequate consideration, of the bulk of his property, would be a fact that should put creditors upon inquiry as to the sufficiency of the residue to satisfy their claims.

Such an inquiry it seems they did not make until more than five years had elapsed after administration was opened; until that time had elapsed after their rights to be paid out of any property subject to the payment of the intestate's debts had attached.

They relied upon the declarations made by the administrators in the inventories alone for information as to the sufficiency of the assets of the estate to pay its debts.

They knew that the inventories were not evidence of title as against strangers, and not conclusive even against the administrators, and that administrators often inventory property claimed by their intestates to which their titles were not good, they selling such title as the estate has.

They knew that it was the duty of the administrators to inventory such property as belonged to the estate, but they knew that the administrators were but the representatives, in a certain sense,

of the creditors and those claiming as heirs, and that they only exercised their own judgments as to titles. Yet they rested content to rely upon their opinions as to what property belonged to the estate, and seem never to have made inquiry for themselves.

It does not appear that the plaintiffs had any more knowledge, after the sales made five years after the death of Calhoun than they had at the time of his death, as to the validity of the titles to property inventoried, for they made no proof sufficient to show that the titles may not have been in every respect valid; but from the fact that the property did not bring a fair price, that titles were not exhibited, and that the administrator would not declare the titles good, they at once, when the sale was made, came to the conclusion that the titles were imperfect.

The information derived from the administrator on days of sale, so far as the record shows, might have been had for the asking at any earlier period, but such information was not sought, so far as it is alleged or proved, although the plaintiffs must have known that such papers as evidenced titles to the estate should be in his possession.

Such information as to title as could be derived from a sale of the inventoried property, and as to its sufficiency to pay the debts, if sold in a fair market and under favorable monetary conditions, might doubtless have been had at a much earlier period than was the sale made, for it was the right of the creditors to have the lands sold several years before they were sold.

A sale made under circumstances which would have shown that whatever interest the estate had in the lands was fairly sold, and for a fair price, if it did not sell for enough to pay the debts, would have gone far towards showing that the property in question was necessary, at the time it was conveyed, to meet the liabilities of the estate, and therefore the conveyance, if voluntary, invalid; yet information from this source was not, as it might have been, obtained without unnecessary or unreasonable delay.

We believe it to be the duty of a creditor of a deceased person's estate, having knowledge of such facts as the plaintiffs had knowledge of, to investigate for themselves whether the property in the hands of an administrator will be sufficient to pay their claims, and as this must depend largely upon the character of title or right held, it involves the duty to examine the title.

There is nothing in the pleadings or evidence which tends to show that the defendants concealed or in any manner withheld from the plaintiffs any information possessed by them, which would have

brought to light the true state of the titles to the property inven-
toried; but so far as the record shows, the plaintiffs may have had
as much information or means of knowledge upon this subject as
any other living person.

It is not shown that there were any obstacles to a full examina-
tion of titles to the property by the plaintiffs.

Such an examination can ordinarily be made as will satisfy the
mind, and if, upon such examination, titles to property claimed for
a deceased person's estate be doubtful, and there be other property
subject to sale for the debts of the estate, in the hands of persons
entitled to hold it as against all other persons than the creditors,
then the creditors should promptly take steps to subject it; other-
wise great injustice may be done to persons situated as were the
defendants.

Titles to land cannot always be evidenced by existing recorded
r unrecorded instruments in writing. Once existing, they may be
st or destroyed, and every passing day but adds difficulty to prov-
ing their existence and contents.

They may not be legal titles, but only such as a court of equity
would enforce, and proof of the facts on which their existence de-
pends may depend largely on parol testimony, which time renders
inaccessible.

Such considerations but indicate the necessity for prompt action
by one who bases his right to proceed against property claimed and
possessed by another under title indefeasible, save by the failure of
title, or evidence of title to other property primarily liable to his
claim.

If the plaintiffs failed to obtain the knowledge which they might
have obtained by the exercise of ordinary diligence, they must suf-
fer the results of their own laches. We find nothing to relieve
them from the bar of the statute which declares: "Whenever, in
any case, the action of a person for the recovery of real estate is
barred by any of the provisions of this chapter, the person having
such peaceable and adverse possession shall be held to have full
title, precluding all claims." R. S., 3196.

The instructions relating to the effect of three years' possession
under title from the government should have been given to the jury,
the court having submitted no sufficient issue upon that point.

The instruction relating to the effect of five years' possession was,
in view of the other issue, perhaps unimportant, but, we may say,
ought not to have been given in the form asked, for the proof was
clear that the taxes had not been paid on all the land.

Matters presented by other assignments need not be considered, for, in so far as they may be material, the same matters are not likely to occur on another trial.

For the reasons mentioned the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 20, 1885.]