WESTERN COTTAGE PIANO AND ORGAN COMPANY v. B. O. GRIFFIN.

Decided December 2, 1905.

**1.—Venue—Fraud.**

Where an action is founded on fraud the defendant may be sued in the county in which the fraud was perpetrated.

**2.—Nonresident Defendant—Jurisdiction.**

Where a nonresident defendant appears for the purpose of quashing a citation the court acquires jurisdiction over his person and the cause of action.

**3.—Limitation—Fraud.**

Limitation does not begin to run against an action founded on fraud until the fraud is discovered or might have been discovered by due diligence.

**4.—Conclusion of Fact—Overruled.**

The evidence as disclosed by the statement of facts considered, and held not to support a finding of fact by the trial court.

**5.—Compromise—Bar to Action.**

Where a previous compromise or settlement includes the matter made the basis of an action it is a bar to such action.

Appeal from the District Court of Erath County. Tried below before Hon. W. J. Oxford.

*F. M. Brantley*, for appellant.—Two years' limitation applies to actions for fraudulent representations: Bass v. James, 83 Texas, 110.

The averment that fraud could not be discovered earlier insufficient: Bremond v. McLean, 45 Texas, 19; Kuhlman v. Baker, 50 Texas, 635, 636; Parish v. Alston, 65 Texas, 194; Beissner v. Texas Express Co., 1 W. & W. App. Civ. Cases, sec. 806, p. 457; Parker v. Kuhn, 21 Neb., 425.

Limitation runs in favor foreign corporations. Thompson v. Texas Land & C. Co., 24 S. W. Rep., 856.

The matters embraced in and arising out of the consignment contracts were those of interstate commerce, not requiring a permit. See Allen v. Tyson-Jones Buggy Co., 91 Texas, 22; Miller & Co. v. Goodman, 91 Texas, 41; Keating Im. & M. Co. v. Favorite Carriage Co., 35 S. W. Rep., 417.

*Oxford & Carlton* and *Riddle & Keith,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—Appellant, a foreign corporation engaged in interstate commerce, was sued by the appellee in the District Court of Erath County for both actual and exemplary damages resulting from the alleged fraud of appellant's general agent perpetrated in that county August 15, 1901. The trial, which was before the court without a jury, resulted in a judgment in appellee's favor for one hundred and fifty dollars as actual damages.

Appellant appeared and presented a motion to quash the citation, which was sustained by the court. At the succeeding term of the court, when the case was called for trial, appellant denied the jurisdiction of the court, claiming that the suit should have been brought in Tarrant County, in which, according to the allegations of the petition, it had its office and agents; but the answer to this is that the cause of action, being one for deceit, arose in Erath County. (McCord-Collins Commerce Co. v. Levi, 50 S. W. Rep., 606.) On the question of jurisdiction apart from venue, see York v. State (73 Texas, 651).

It is next claimed that the cause of action was stale and barred by limitation, the suit not having been filed until November 11, 1903, but as the petition alleged, and the court found, on sufficient evidence, that appellee failed to discover the fraud until about November 22, 1901, and that his failure to discover it sooner was not due to negligence, this contention is overruled. (Ingram v. Abbott, 14 Texas Civ. App., 588, 38 S. W. Rep., 626.)

The court found against appellee on his claim for exemplary damages, but also found against appellant on its plea charging that the allegations supporting this claim had been fraudulently made for the purpose of giving the District Court jurisdiction. There was evidence in support of this finding, which disposes of the assignments complaining of a want of jurisdiction on this ground.

On the merits of the controversy the court made the following findings: "5th. I find that one J. B. McCarley, acting as such agent for the defendant on the 15th day of August, 1901, in Erath County, Texas, represented to the plaintiff that one J. D. Wilkins, to whom the defendant had consigned organs and pianos for sale, and upon whose consignment contract plaintiff was a guarantor, was behind with the said company upon said consignment contract in the sum of three hundred dollars, for which plaintiff and the other guarantors thereon were liable, and that the said Wilkins then owned, in his own right and free from incumbrances, eleven head of horses, nine organs, one piano and four hacks, besides other collateral; and further, that if plaintiff and the other guarantors upon said consignment contract would sign and execute a note with the said Wilkins to obtain the sum of three hundred dollars thereon, that he (McCarley) would release the mortgage which

he, the said McCarley, held against the said property belonging to Wilkins, and that he (Wilkins) would then execute to the plaintiff a chattel mortgage thereon to secure him against the payment of said note; and further represented that when he, McCarley, released his mortgage, said property would be free from incumbrances.

"6th. I find that each and all said representations were false and untrue, and that the plaintiff was thereby induced to sign and execute notes in the sum of three hundred dollars.

"7th. I find that plaintiff became responsible upon said notes, and paid thereon the sum of one hundred and fifty dollars.

"8th. I find that the defendant received and accepted the proceeds of said notes."

These findings are assailed by appellant for not being supported by the evidence, but, with one exception, the evidence, though conflicting, warranted them. If, however, the court meant to find, as the above quotation would seem to indicate, that Wilkins was not "behind with the said company" August 15, 1901, we are constrained by the statement of facts to overrule that finding. The following is quoted as the testimony of J. B. McCarley, and is especially relied on by the appellee to sustain this finding: "The reason why I did not make these statements is because I was not there to fix up with Wilkins's bondsmen for any shortage by Wilkins. I did not know he was short, and I don't think he was," etc. As copied in the statement of facts the testimony was as follows: "The reason why I did not make these statements is because I was not there to fix up with Wilkins's bondsmen for any shortage by Wilkins; I did not know it was short—think it was the reason why Winkins wanted them to go on the notes was to enable him to get the money to pay for a number of instruments represented to be on hand not sold by him, and it would enable him to sell them as his; they were his instruments after this was paid. Wilkins did, however, afterward execute and deliver to me some such mortgage on his hacks and horses, etc., to secure subsequently discovered shortage of his to the company. This is the mortgage here in my hand, and counsel may examine it if he wishes. It was executed on or about October 1, 1901, and bears that date." The above testimony was given on redirect examination by appellee, the witness having already testified "that, in this settlement, had on said 23d day of November with plaintiff B. C. Griffin and the other guarantors—or, rather, at the time of the same—the account of said J. D. Wilkins, their principal, had been given credit for the items of liability embraced in the settlement had with Wilkins on the 16th day of August previous. The guarantors on Winkins's contract with the company, of course, indirectly received the benefit of this partial settlement had with Wilkins on August 15, as it embraced goods that Wilkins had received from the company under said consignment contracts, and for the accounting for same by Wilkins the guarantors were liable." Other testimony found in the record leaves little room for doubt that Wilkins was behind with appellant at the date of the transaction in August, 1901, in the sum of three hundred dollars or more, for which appellee and other guarantors were liable. For instance, it is shown by the deposition of appellant's secretary, who also had charge of all the collections and the general direction of the travel-

ing salesmen for the company, that the remittance of $278, made by McCarley to the company on August 19, 1901, evidently out of the cash received from the negotiation of the note executed August 15, 1901, had been applied to the notes held by the company against various parties to whom Wilkins had sold organs. Taken altogether, the testimony did not warrant a contrary finding. This, however, would not require the judgment to be reversed, but for the further fact, not found by the court but distinctly alleged and clearly established by the evidence, that on November 23, 1901, appellee and the other guarantors for Wilkins, by executing their promissory note in favor of appellant in the sum of $275 to cover the shortage of Wilkins, obtained from it a release of all liability as guarantors, the company surrendering to them their contract of guaranty for cancellation. In making this settlement the guarantors evidently received credit for $278 of the proceeds of the note executed August 15, 1901. The compromise, which was unconditional, necessarily included the transaction made the basis of recovery.

The judgment is therefore reversed, and here rendered for appellant.

*Reversed and rendered.*