## YOUNG v. BARCROFT. (No. 7967.)

(Court of Civil Appeals of Texas. Ft. Worth. May 9, 1914. On Motion for Rehearing, June 20, 1914.)

1. APPEAL AND ERROR (§ 934*) — PRESUMPTIONS IN SUPPORT OF JUDGMENT.

Every reasonable presumption must be indulged on appeal to support the judgment rendered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3782; Dec. Dig. § 934.*]

2. FRAUD (§ 4*) — TRANSFER OF NOTE—LIABILITY OF TRANSFERROR.

The transferror of a note, which falsely purported to be secured by a vendor's lien on land, was liable to the transferee for the amount paid for the note, whether he practiced an intentional fraud or honestly believed that the note was secured by a valid lien on the land.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 2; Dec. Dig. § 4.*]

3. FRAUD (§ 30*)—LIABILITY OF PARTY PARTICIPATING IN PROCEEDS.

Where the agent, through whom plaintiff negotiated the purchase of a note which falsely purported to be secured by a vendor's lien, was jointly interested with the seller of the note in the proceeds of the sale, he was jointly liable with him to plaintiff for the fraud.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 35; Dec. Dig. § 30.*]

4. LIMITATION OF ACTIONS (§ 100*)—COMPUTATION OF PERIOD OF LIMITATION—DISCOVERY OF FRAUD.

Where plaintiff, when he purchased a note which falsely purported to be secured by a vendor's lien, did not know that the agent, through whom he negotiated the purchase, was jointly interested with the seller of the note in the proceeds of the sale, limitations did not run against his right of action against the agent for the fraud until his discovery of such agent's interest.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

5. FRAUDS, STATUTE OF (§ 158*)—PAROL EVIDENCE TO PROVE TITLE.

In an action to recover the amount paid by plaintiff for a note which falsely purported to be secured by a vendor's lien, the testimony of the defendant that the first information he had that the pretended vendor's title was defective was acquired from plaintiff was not incompetent as proving the title to real estate by parol testimony, but was clearly upon the issue of fraud.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 373–376; Dec. Dig. § 158.*]

6. FRAUD (§§ 53, 58*)—ACTIONS FOR DAMAGES —EVIDENCE.

In an action to recover the amount paid for a note purporting to be secured by a vendor's lien on land, testimony that parties other than the pretended vendor had been in peaceable and adverse possession of the land for years was admissible and in connection with the testimony of the county clerk that no deed appeared of record tending to show title in the vendor conclusively established that he had no interest in the land.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 49, 55–59; Dec. Dig. §§ 53, 58.*]

On Motion for Rehearing.

7. LIMITATION OF ACTIONS (§ 197*)—EVIDENCE —WEIGHT AND SUFFICIENCY.

In an action to recover the amount paid for a note which falsely purported to be secured by a vendor's lien, evidence held insufficient to show beyond controversy that plaintiff had knowledge of the fraud more than two years prior to the filing of the suit.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 722–726; Dec. Dig. § 197.*]

8. LIMITATION OF ACTIONS (§ 100*)—COMPUTATION OF PERIOD OF LIMITATION—DISCOVERY OF FRAUD.

Limitations did not run against an action to recover the amount paid for a note falsely purporting to be secured by a vendor's lien from the time that the purchaser was told by his attorney that he believed the note was a bogus transaction and that there was something wrong with the title, but only from the time when, by the exercise of ordinary care and with the information furnished him by the attorney, he could have discovered the pretended vendor's lack of title.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

Appeal from District Court, Nolan County; W. W. Beall, Judge.

Action by E. A. Barcroft against J. F. Young and others. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Scarborough & Hickman, of Abilene, for appellant. R. N. Grisham, of Sweetwater, for appellee.

DUNKLIN, J. O. O. Jobe executed a deed purporting to convey to Jud Brown 280 acres of land out of the Mary Hall survey in Frio county, and at the same time Brown executed six promissory notes in the sum of $600 each payable to Jobe and purporting to be purchase-money notes for the conveyance. One of these notes was transferred to J. F. Young by Jobe by written transfer, which also included a transfer of the purported vendor's lien retained in the deed, with the further agreement that the note so transferred should be a first lien upon the land superior to the lien for the other five notes. Young transferred the note and purported

lien to J. E. Pratt, who in turn transferred the same to E. A. Barcroft. E. A. Barcroft instituted this suit against Brown, Jobe, Young, and Pratt to recover the amount of the note, alleging the facts above recited, and further that Jobe never owned the land described in his deed to Brown, or any part thereof; that neither Jobe nor any of his vendees were ever connected with the title or possession of the said land; and that the purported lien was a fiction and the recital thereof fraudulent. It was further alleged that Jobe, Young, and Pratt had each warranted the note to be a good, valid, and legal instrument and a first lien on the land mentioned; that Young and Pratt received jointly the consideration paid by plaintiff for the note and represented to plaintiff at the time that the note was secured by a valid and subsisting lien on the land; that the land was of sufficient value to pay the note; that the title to the land was free from all incumbrances, except the purported purchase-money notes mentioned; that plaintiff relied on and believed all of the representations so made by Young and Pratt and was induced thereby to purchase the note; that all of said representations were false and known to be false by Young and Pratt at the time they made them; and that Young and Pratt made the same for the purpose of defrauding the plaintiff out of the consideration paid for the note. On account of his insolvency, a nonsuit was taken as against Brown. A judgment was rendered in favor of plaintiff against Jobe, Pratt, and Young for the amount of the note; the judgment against Jobe and Pratt being by default. Defendant Young has appealed.

Among other defenses Young urged the statute of limitations of two years to plaintiff's cause of action. He also pleaded specially that he transferred the note to Pratt without recourse. He further denied any fraud on his part in the several transfers alleged and denied knowledge of any fraud by the other defendants.

The case was tried by the court without a jury, and no findings of fact by the court appear in the record. In the statement of facts appears a written transfer of the note and purported lien from Young to Pratt which stipulates that the transfer of the note is "without recourse on me in any way or manner whatsoever." The transfer contains this further stipulation:

"Said note being executed in part payment for the following described tract of land situated in the county of Frio, state of Texas, being 280 acres of land out of Mary Hall survey, as fully described in deed from O. O. Jobe to Jud Brown of even date with this said note, the above-described note is one of a series of six notes, executed by same party, and being for the same amount, but it is expressly understood by and between the parties hereto the note herein conveyed shall be a first lien prior to all the other notes, as described in transfer from O. O. Jobe to J. F. Young. And I also hereby bargain, sell and convey unto the said J. E. Pratt all of the right, title and interest owned or held by me in said land by virtue of said note herein conveyed and assigned. Said land and note being fully set out and described in a deed duly executed by Jud Brown to the said O. O. Jobe and recorded in volume ——, page ——, records of deeds for —— county, Texas, which is referred to and made a part hereof for further description. To have and to hold unto the said J. E. Pratt, his heirs and assigns, the above-described note, together with all and singular the contract lien, vendor's lien, rights, equities, title and interest in said land which I have by virtue of being the legal holder and owner of said note."

The record shows without dispute that Jobe never owned a vestige of title to the land described in his deed to Brown. Plaintiff testified that he exchanged for the note in question certain real estate which had been listed with Young as his agent for sale; that Young, acting as such agent, proposed that plaintiff make such exchange and strongly advised him to do so, and this testimony was not denied by Young. The evidence further shows without controversy that Young and Pratt shared jointly in the fruits of the trade with the plaintiff. Plaintiff further testified that he never discovered that Young was interested with Pratt in the trade so made until the fall of 1911. He further testified that, in order to induce him to make the trade, Young represented to him that the note was a good note; that the title to the land covered by the purported vendor's lien had been investigated and found good; and that the land was of good quality.

The principal contentions made by the appellant are: First, that, as Young had transferred the note without recourse upon him in any manner whatsoever, he cannot be held as indorser or warrantor of the note or the lien; second, that, if Young is liable at all, his liability is for fraud and deceit practiced upon the plaintiff, and that the cause of action for such fraud was barred by the statute of limitations of two years.

"When the indorsement is 'without recourse,' the indorser specially declines to assume any responsibility, as a party to the bill or note; but, by the very act of transferring it, he engages that it is what it purports to be—the valid obligation of those whose names are upon it. He is like a drawer who draws without recourse; but who is nevertheless liable if he draws upon a fictitious party, or one without funds. And therefore the holder may recover against the indorser 'without recourse': (1) If any of the prior signatures were not genuine; or (2) if the note was invalid between the original parties, because of the want or illegality of the consideration; or if (3) any prior party was incompetent; or (4) the indorser was without title." 1 Daniel, Negotiable Instruments (6th Ed.) § 670.

"The transferror of commercial paper, even where indorsed 'without recourse,' warrants the validity of the instrument. Thus he is held impliedly to warrant that the paper is supported by valid consideration; that it is properly stamped; that the prior parties had capacity to contract; that the instrument is still subsisting as a valid obligation; and in general that there is no written defense growing out of his own connection with the paper." 7 Cyc. 831–833.

[1] Every reasonable presumption must be indulged to support the judgment rendered. As Jobe had no title to the land purported to be conveyed to Brown, there was a total want of consideration to support the note as a demand against Brown, and, if the rule announced in the authorities above noted should be held to apply, Young in transferring the note and purported lien was liable upon his indorsement, even though the same was without recourse, and, if so liable, the statute of limitation of four years, and not that of two years, would be applicable. But it is not necessary to determine, and we do not determine, whether or not Young is liable upon his indorsement of the note, for we have concluded that the judgment must be affirmed for other reasons hereinafter ·stated.

[2-4] According to the testimony of Barcroft, Young induced him to believe that he was acting as his agent in the transaction between Barcroft and Pratt, which resulted in the purchase of the note by Barcroft from Pratt, and did not discover that Young was jointly interested with Pratt in the transaction until the fall of 1911. Aside from his liability by reason of any indorsement of the note by him, Pratt was liable to the plaintiff for the amount the latter paid for the note whether he honestly believed that the note was secured by a valid lien upon the land, or whether he practiced an intentional fraud in the transaction, as the evidence seems to indicate, and, if Young was jointly interested with him in the proceeds acquired by the transaction, he was also jointly liable with Pratt to the plaintiff for the fraud. If, through no negligence on his part, plaintiff did not discover such interest of Young until the fall of 1911, as the court could reasonably have found, then his cause of action for fraud against Young did not begin to run until that time, and; if it did not begin to run until that time, the statute of limitations of two years, as against the cause of action for fraud and deceit, is not available to Young, since the suit was instituted in August, 1913. While the plaintiff testified substantially that he discovered that there was something wrong with the title to the land the latter part of 1910, yet, according to his testimony, he believed at the time and until the fall of 1911 that Young had acted as his agent only in the transaction. Young testified that he had no information that the title was defective until he learned it from Barcroft after the latter had acquired the note. Under this and other testimony, the court reasonably could have concluded that the participation with Pratt in the fruits of the transaction with Barcroft was the only fact which rendered Young liable for the fraud practiced upon the plaintiff in selling him the note, notwithstanding the fact that it seems that the negotiations which Barcroft had with Pratt were chiefly through Young.

[5, 6] Error has been assigned to the admission of testimony of the defendant Young over his objection that the first information he had of the title to the land being defective was from the plaintiff himself. The objection urged was that the title to real estate cannot be proven by parol testimony. Substantially the same objection was urged to the testimony of John Pranglin introduced over defendant's objection; John Pranglin's testimony being substantially that other parties have been in peaceable and adverse possession of the land described in the notes since the year 1892. The testimony of the defendant Young was clearly upon the issue of fraud only and did not in any manner tend to show title, while the testimony of Pranglin was admissible to show title in parties other than any of the persons connected with the note in question. Furthermore, it was shown conclusively by the testimony of the county clerk of Frio county that no deed appeared of record in his office tending in any manner to show title in Jobe to the land. This evidence was introduced without any objection on the part of the appellant, and in connection with Pranglin's testimony conclusively established the fact that Jobe never owned any interest whatever in the land which he purported to convey to Brown.

For the reasons noted, the judgment is affirmed.

### On Motion for Rehearing.

[7] Appellant earnestly insists that plaintiff's petition contained no allegation that Young fraudulently concealed the fact that he was jointly interested with Pratt in the trade made with Barcroft, and that, in the absence of such an allegation, the plea of limitation of two years could not be made to begin at the time Barcroft discovered that Young and Pratt were jointly interested in the transaction. The fraud practiced upon Barcroft consisted of misrepresentations that the note was secured by a valid and subsisting lien on the land. Those misrepresentations induced Barcroft to make the trade and necessarily constituted his cause of action. The concealment of Young's joint interest with Pratt in the transaction was not the particular fraud relied on for a recovery, but it was so intimately connected with it as to form a part and parcel thereof. Plaintiff alleged in his petition, as a part of the fraudulent transaction, that Young and Pratt received jointly the consideration paid for the note, and Young in his verified answer thereto specially denied that he received any part of such consideration, and specially denied:

"That he made any representations that were false or fraudulent, or that he was a party to or in any manner connected with J. E. Pratt in making this or any false representations whatever, and never at any time intended to defraud the plaintiff in any manner."

It further appears that the testimony of Barcroft that he did not discover that Young was interested with Pratt in the trade until

the fall of 1911 was introduced without objection on the part of Young, and his testimony that he did not discover Young's interest in the transaction until after the consummation of the trade was several times repeated without objection. Young also testified by deposition as follows:

"I represented Mr. Barcroft in the sale of the land to Pratt, and it was thoroughly understood between Mr. Barcroft, Mr. Pratt, and myself that I was to deed the lots direct to Mr. Barcroft and that Mr. Pratt was to deed me one-half of the land, though I bought the land from Mr. Pratt."

[8] This deposition was introduced by plaintiff without objection on the part of Young. The evidence shows without controversy that, during the latter part of the year 1910, Barcroft's attorney informed him that in his opinion the note was a bogus transaction, and that there was something wrong with the title to the land. This information was sufficient to put Barcroft upon inquiry to discover the fact that Jobe never owned any title to the land at the time the note in controversy was executed by Brown to him. It would not necessarily set in operation the statute of limitation at that time, as limitation would begin to run only from the date when Barcroft should, by the exercise of ordinary care and with the information noted, have discovered such lack of title in Jobe. Upon the trial he proved such lack of title by the testimony of the county clerk that there was no record of any such title in Jobe and by the witness Pranglin of peaceable possession by other parties than Jobe for more than 30 years. Of course such proof did not necessarily show that Jobe did not hold an unrecorded deed, but during the pendency of the suit plaintiff attempted to take the deposition of Jobe, who, upon being notified by the notary to appear and answer the interrogatories, requested a few days' delay to enable him to make a trip to another county, but afterwards wholly failed to appear and answer the interrogatories. Furthermore, the evidence shows that, after receiving the information from his attorney, noted above, he wrote to Young relative thereto, requesting that he take the matter up with Pratt, but failed to get any information in answer to such inquiry. And Young, who once owned the note, testified on the trial as follows:

"I have never heard from any source except Mr. Barcroft that Jud Brown, Jobe, myself, and Pratt never owned any land in Frio county."

Under all the facts and circumstances in evidence, we are unable to conclude, as contended by appellant, that the evidence showed without controversy that Barcroft was chargeable with full knowledge that the purported lien stipulated in the note was a fraud more than two years prior to the filing of the suit, and for that reason, in addition to the reasons noted in the original opinion, we are unable to say that the action of the trial court in refusing to sustain the plea of limitation was erroneous.

The motion is overruled.

SPEER, J., not sitting.