## STEELE et al. v. GLENN.
### No. 1034.

Court of Civil Appeals of Texas. Eastland.
Jan. 13, 1933.

Rehearing Denied March 10, 1933.

J. B. Lewright, of San Antonio, and Cunningham & Oliver, of Abilene, for plaintiffs in error.

Kirby, King & Overshiner and Frank Smith, all of Abilene, for defendant in error.

FUNDERBURK, Justice.

Dr. R. P. Glenn commenced this suit June 23, 1930, against the Delaware Punch Company of America and Wallace Steele as its agent to recover damages for alleged fraudulent representations claimed to have induced the sale to plaintiff of certain stock in said company. The sales involved four separate transactions: The first on June 26, 1926; the second on June 9, 1927; the third on September 8, 1927; and the fourth on November 20, 1927. Each transaction is construed to be a separate cause of action.

With reference to these several transactions, the jury to whom the case was submitted upon special issues made findings as follows:

First. As to the sale of June 26, 1926:

(a) That on June 26, 1926, Glenn bought 10 shares of preferred stock of said company for $1,000, its par value, and that he did so on these representations on that date made to him by Steele as agent of said company, to wit: (1) That said company was going to build bottling works in most every city in Texas, including Dallas and Abilene; (2) that said 10 shares of preferred stock were then worth $100 per share; (3) that said company then had plans of which only the details remained to be worked out, whereby said company would place its stock for sale upon the New York curb market; (4) that said company on that date had as a part of its assets $350,000 cash in bank.

(b) That each of said representations was false, and that each was made as a material inducement to Glenn to buy such stock on June 26, 1926, and that Glenn would not have bought said stock if said representations had not been made to him by Steele at that time.

(c) That said company did not then intend to build bottling works in most every city in Texas, including Dallas and Abilene. That the actual value of said 10 shares of stock on June 26, 1926, was only $45 per share. That said company did not then intend to place its stock for sale upon the New York curb market and did not have $350,000 cash in bank on that date.

Second. As to the sale of June 9, 1927:

(a) That on February 3, 1927, Steele as agent for said company made to Glenn precisely the same four alleged representations that were made June 26, 1926, on the strength of which Glenn bought 45 shares of said preferred stock of said company on June 9, 1927.

(b) That said company did not on February 3, 1927, intend to build bottling works in most every city in Texas, including Dallas and Abilene.

(c) That each of said four representations was made as a material inducement to Glenn to buy said additional 45 shares of stock by him on June 9, 1927.

(d) That Glenn would not have thus bought said 45 shares of stock on June 9, 1927, if each of said representations had not been made to him by Steele on February 3, 1927.

(e) And that said 45 shares of preferred stock were worth only $30 per share when so bought.

Third. As to the sale of September 8, 1927:

(a) That said representations made by Steele to Glenn on February 3, 1927, that said company was going to build bottling works in most every city in Texas, including Dallas and Abilene, were made as a material inducement to Glenn to buy 100 shares of the common stock of said company, which Glenn bought on September 8, 1927.

(b) That Glenn would not have bought said 100 shares of common stock if said representations had not been made to him by Steele on February 3, 1927.

(c) That Steele acted as an agent of said company in the sale of said 100 shares of common stock to Glenn on September 8, 1927.

Fourth. As to the sale of November 20, 1927:

(a) That the representation made by Steele to Glenn on February 3, 1927, that said company was going to build bottling works in most every city in Texas, including Dallas and Abilene, was made by Steele as agent of said company as

(b) A material inducement to Glenn to buy 200 additional shares of the common stock of said company which Glenn bought on November 20, 1927.

(c) That Glenn would not have bought said 200 shares of stock but for said representation of February 3, 1927.

(d) That Steele acted as agent of said company in the sale of said 200 shares of common stock to Glenn on November 20, 1927.

The jury found in favor of Glenn all issues submitted with reference to falsity, materiality, reliance, etc., upon each and all of the representations above mentioned, and as to the promissory representations that same were made without intention of the company to perform.

In answer to other special issues, the jury found that Glenn discovered the falsity of said representations about August 28, 1929, and that he exercised reasonable diligence to discover such falsity. It was also found that in all the transactions Steele was the agent of said company. From the judgment for plaintiff below the defendants have prosecuted writ of error.

The Delaware Punch Company of America, which for convenience will be referred to as "defendant company," duly filed its brief herein. Wallace Steele tendered his briefs for filing on submission day, together with a motion for permission to file same, which, being contested, we overruled. An inspection of the brief tendered shows that for a part of same it adopted the assignments of error, propositions, and arguments of defendant company, and we are now of the opinion that we should have permitted the filing of the brief, but have limited consideration thereof to such of defendant company's brief as was adopted and applicable to defendant Steele. Our former order should be modified to such extent, and it is accordingly so ordered.

■ The first assignment of error (urged by both of the defendants) presents the question of the right of defendants to an instructed verdict on the ground that, as shown by the undisputed evidence, the plaintiff's causes of action were, at the commencement of the suit, barred by limitation. Revised Statutes, art. 5526, in part reads: "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * * 4. Actions for debt where the indebtedness is not evidenced by a contract in writing." This suit being an action for damages for deceit, the above is the applicable provision of the statutes of limitation. Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S. W. 40.

■■ In view of the many decisions cited and relied upon by the parties to sustain their several contentions and their wide divergence of views, we deem it necessary to a proper understanding of our conclusions, and as conducive to brevity, to devote some space to a general consideration of the law of limitation as applied to cases involving causes of action based upon fraud. One material inquiry is: When did the several causes of action involved herein "accrue?" It will not be questioned, we take it, that they—four in number—accrued respectively on June 26, 1926, June 9, 1927, September 8, 1927, and November 20, 1927, unless, because of the fact that the causes of action are based upon fraud and plaintiff's ignorance of the fraud, the time of such accrual was thereby postponed. "The general rule is that a right of action accrues whenever facts come into existence which give rise to a cause of action." 1 Tex. Jur. 632; Western Wool Commission Co. v. Hart (Tex. Sup.) 20 S. W. 131. A cause of action based upon a consummated legal wrong accrues immediately, regardless of whether or not the injured party has knowledge of the wrong. Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S. W. 36. Is a cause of action based upon fraud subject to any different rule? More concretely stated, the question is: When a cause of action is based upon fraud, does it accrue when the fraud is committed, or does it accrue when the fraud is discovered or the plaintiff acquires knowledge of such facts, as in the exercise of reasonable diligence would lead to a discovery of the fraud?

Numerous decisions declare, in substance and in effect, that, in cases of fraud, limitation does not begin to run until the fraud is discovered, or, in the exercise of reasonable diligence, would (or could or should) have been discovered. Bass v. James, 83 Tex. 110, 18 S. W. 336; Smith v. Fly, 24 Tex. 345, 76

Am. Dec. 109; Bremond v. McLean, 45 Tex. 10; Hudson v. Wheeler, 34 Tex. 356; Alston v. Richardson, 51 Tex. 1; Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Emerson v. Navarro, 31 Tex. 335, 98 Am. Dec. 534; Mason v. Peterson (Tex. Com. App.) 250 S. W. 142; Martinez v. Gutierrez (Tex. Civ. App.) 172 S. W. 766; Sowell v. Huffman (Tex. Civ. App.) 182 S. W. 1152; Gulf Production Co. v. Palmer (Tex. Civ. App.) 230 S. W. 1017; Bain v. Lovejoy (Tex. Civ. App.) 215 S. W. 984; Gillispie v. Gray (Tex. Civ. App.) 214 S. W. 730; Howell v. Bank of Snyder (Tex. Civ. App.) 158 S. W. 574; Coleman v. Ebeling (Tex. Civ. App.) 138 S. W. 199. A few cases refer to the time of discovery as being the time when the cause of action accrued.

Other decisions declare, in effect, that fraud will only prevent the running of limitation until discovery or until, by the exercise of reasonable diligence, same would (or could or should) have been discovered. Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Brown v. Brown, 61 Tex. 45; Kennedy v. Baker, 59 Tex. 150; Martinez v. Gutierrez (Tex. Civ. App.) 172 S. W. 766; Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 347; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48; Shuttleworth v. McGee, 47 Tex. Civ. App. 604, 105 S. W. 823. Many cases use the two forms of expression interchangeably as meaning the same thing.

There are many decisions which seem to hold or imply that, in order to prevent the bar of limitation within the statutory period, undiscovered fraud or mistake alone is not sufficient, but to have such effect there must exist, in addition thereto, subsequent acts of fraudulent concealment. McFaddin v. Prater (Tex. Sup.) 3 S. W. 306; Connoly v. Hammond, 58 Tex. 11; Kuhlman v. Baker, 50 Tex. 630; Rowe v. Horton, 65 Tex. 90; Hudson v. Wheeler, 34 Tex. 356; Tinnen v. Mebane, 10 Tex. 246, 60 Am. Dec. 205; Carver v. Moore (Tex. Com. App.) 288 S. W. 156; Standford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 449; Davis v. Howe (Tex. Com. App.) 213 S. W. 609; Prosser v. First National Bank (Tex. Civ. App.) 134 S. W. 781.

But, apparently to the contrary of the decisions of which the last named are examples, are other cases holding or necessarily implying that the original fraud upon which the cause of action is based, if undiscovered, and no facts are learned which would put a reasonably prudent person upon inquiry, will, until such discovery, or the learning of such facts, prevent the running of limitation. Ripley v. Withee, 27 Tex. 14; Anding v. Perkins, 29 Tex. 348; Emerson v. Navarro, 31 Tex. 335, 98 Am. Dec. 534; Calhoun v. Burton, 64 Tex. 510; Brown v. Brown, 61 Tex. 45; Smalley v. Vogt (Tex. Civ. App.) 166 S. W. 1;

Wortman v. Young (Tex. Com. App.) 235 S. W. 559; Thomason v. Rogers (Tex. Civ. App.) 155 S. W. 1040; Young v. Barcroft (Tex. Civ. App.) 168 S. W. 392; Luginbyhl. v. Thompson (Tex. Civ. App.) 11 S.W.(2d) 380; Shuttleworth v. McGee, 47 Tex. Civ. App. 604, 105 S. W. 823; Coleman v. Ebeling (Tex. Civ. App.) 138 S. W. 199; Stone v. Burns (Tex. Civ. App.) 200 S. W. 1121.

Another important inquiry is the applicability, if any, and the effect of the principles of the law of negligence. Decisions are many which expressly hold or necessarily imply, or at least reasonably imply, the existence of a duty on the part of plaintiff to exercise diligence to discover the fraud. Rowe v. Horton, 65 Tex. 90; Texas & P. Ry. Co. v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52; Id., 88 Tex. 114, 30 S. W. 543; Alston v. Richardson, 51 Tex. 1; McFaddin v. Prater (Tex. Sup.) 3 S. W. 306; Calhoun v. Burton, 64 Tex. 510; Mason v. Peterson (Tex. Com. App.) 250 S. W. 142; Powell v. March (Tex. Civ. App.) 169 S. W. 936; Standford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 449; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48; Waters v. East, 23 Tex. Civ. App. 412, 56 S. W. 939; Prosser v. First National Bank (Tex. Civ. App.) 134 S. W. 787; Carver v. Moore (Tex. Com. App.) 288 S. W. 156; Griffin v. Linn (Tex. Civ. App.) 3 S.W.(2d) 148; McBurney v. Daughety (Tex. Civ. App.) 19 S.W.(2d) 113; Smalley v. Vogt (Tex. Civ. App.) 166 S. W. 1; Gulf Production Co. v. Palmer (Tex. Civ. App.) 230 S. W. 1017; Gillispie v. Gray (Tex. Civ. App.) 214 S. W. 730; Western Cottage Piano Co. v. Griffin, 41 Tex. Civ. App. 76, 90 S. W. 884.

But to the contrary, or at least as engrafting a qualification thereupon, are decisions holding that the defrauded party is under no duty to make an investigation to discover the existence of fraud unless and until he acquires knowledge of facts to put a reasonably prudent person upon inquiry. Smalley v. Vogt (Tex. Civ. App.) 166 S. W. 1; Stone v. Burns (Tex. Civ. App.) 200 S. W. 1121; Wortman v. Young (Tex. Com. App.) 235 S. W. 559; Isaacks v. Wright, 50 Tex. Civ. App. 312, 110 S. W. 970; McBurney v. Daughety (Tex. Civ. App.) 19 S.W.(2d) 113; Harris v. Flowers, 21 Tex. Civ. App. 669, 52 S. W. 1046; Young v. Barcroft (Tex. Civ. App.) 168 S. W. 392; Luginbyhl v. Thompson (Tex. Civ. App.) 11 S.W.(2d) 380.

It is apparent that all these decisions cannot be given literal effect. That they call for interpretation is well illustrated by the fact that apparently contradictory declarations are often contained in the same decision. Confused and apparently conflicting statements and expressions must be given such interpretation as to conform to principles which are unquestionably recognized as established. Manifestly it is impossible to review all of these cases by separate mention. From a consideration of the whole question

we have reached certain conclusions which we state with such explanatory discussion as seems necessary, as follows:

First. That declarations to the effect that, in cases of fraud, limitation only begins to run when the fraud is discovered, or, in the exercise of reasonable diligence, would (or could or should) have been discovered, are properly to be interpreted as attempts to state the effect of an estoppel upon pleas of limitation rather than the time of accrual of such causes of action. We believe that due observance of principles undoubtedly established requires the holding that a cause of action based upon fraud accrues when the fraud is committed, and that in this particular respect there is no difference between causes of action based upon fraud and other causes of action. What is really meant is, not that limitation only begins to run upon discovery of the fraud, but that estoppel to prevent the running of limitation then ends. The distinction may, in practical effect, in most cases, be unimportant, but is extremely important in some cases. If causes of action based upon fraud constitute an actual exception to the provisions of the statutes of limitations, in that limitation really does not begin to run until discovery of the fraud, then it would never be necessary for the plaintiff to allege facts to excuse delay in filing suit because there would be no delay to be excused. If the statutory time had not elapsed after discovery, there would simply be no question of limitation involved. Plaintiff's petition would never be subject to exception on the ground solely that it showed the commission of the fraud to have been longer than the statutory period before commencement of suit. Another necessary consequence would be that, where the question of limitation could not be raised by exception because of the failure of plaintiff's petition to show the necessary facts, a plea of limitation by the defendant would be insufficient which merely alleged facts to show that the fraud was committed at a time longer than the statutory period prior to commencement of suit. In addition, it would be necessary, in order to make the plea of limitation good, for defendant to allege facts to show that, at a time such that the statutory period had thereafter elapsed before commencement of suit, the fraud was discovered or that plaintiff had knowledge of such facts as would have led a reasonably prudent person to discover it. We know that such is not the law, and are therefore impelled to the conclusion that the cause of action accrues when the fraud is consummated and the running of the statute of limitation thereafter is only avoided, if at all, by an estoppel. If plaintiff's petition shows the lapse of the statutory period before commencement of suit, his petition is subject to exception, unless there is also alleged facts to show an estoppel.

Second. That expressions in decisions stating or implying that plaintiff in cases of fraud may be guilty of negligence, and thereby set in motion the statute of limitation, are inaccurate and misleading. It seems clear to us that the law and principles of negligence have no proper application to this phase of the law of limitations. The notion that they are applicable is apparently the result of an unnecessary and unwarranted inference from the latter part of the statement of the rule that in cases of fraud limitation does not begin to run until fraud is discovered, or, in the exercise of reasonable diligence, would (or could or should) have been discovered. It is little short of amazing how much confusion, inaccuracy of expression, and even contrariety of decision has resulted from this obvious error. It is fundamental that negligence implies the existence of a duty—no duty, no negligence. How it could be thought that the innocent victim of a concealed fraud owes a legal duty to the perpetrator of the fraud to discover same is beyond our power of understanding. Even when the defrauded party acquires knowledge of facts which would prompt an ordinarily prudent person from motives of self-interest to make an inquiry which would result in the discovery of the fraud, there is clearly no legal duty to prosecute such an inquiry or make such discovery. It is wholly immaterial whether he does so or not. What is really intended is to define what shall constitute an equivalent of actual discovery—a kind of constructive discovery. When facts, conditions, or circumstances are shown to have come to the knowledge of the defrauded party which, it can be said, would have caused a reasonably prudent person, under the circumstances, to suspect the existence of the fraud and to make such an investigation by the use of means available, as would have resulted in its discovery, such constitutes the full legal equivalent of discovery. To say or imply that either with or without knowledge of such facts the defrauded party is under the duty of investigating, and because of his negligence (based upon violation of that duty) he loses the right to longer toll the running of limitations, is patently erroneous and confusing. If he has such knowledge, it is wholly immaterial, as said before, what he does about it. He then has in legal contemplation discovered the fraud, and his plea of estoppel cannot avail him to thereafter further prevent the operation of the statute of limitation. Of course, if the duty to make discovery be assumed to exist and in a given case it is found that the plaintiff has been guilty of negligence, there will necessarily be involved the existence of facts which, in themselves, would put a limit to further estoppel. This fact is the only explanation apparent to account for so many cases which seemingly dispose of the question of limitation by reference to the rules and

principles of negligence. If the same result would be reached in all cases, as it is in most, the matter would be of little practical consequence. Unfortunately, however, such is not the case, but, on the contrary, as a result of this misapprehension of the real controlling principles, decisions are to be found wholly irreconcilable.

■■ Third. If the plaintiff's petition, although showing that more than the statutory period has lapsed before commencement of the suit, alleges facts prima facie sufficient to show that, by reason of defendant's fraud, whether fraud upon which the cause of action is based or fraud consisting of subsequent concealment of the cause of action, defendant is estopped to claim the benefit of the running of limitation up to a time such that the running of limitation thereafter would not effect a bar, then the issue of limitation cannot be raised by exception to the pleadings. In such a case, if it be a fact that plaintiff did discover the fraud or acquire knowledge of such facts as would have led a reasonably prudent person to make such discovery, at a time from which, by the running of limitation thereafter, the cause of action would be barred at the commencement of suit, then, in order to raise the issue of limitation, defendant should embody such allegations in his plea of limitations and assume the burden of making proof of same.

■ Fourth. If, however, plaintiff in attempting to allege facts to show estoppel, or, in any other allegations of his pleading, discloses facts, conditions, or circumstances from which the inference would arise that he discovered the fraud or had knowledge of such facts as that a reasonably prudent person would have made inquiry, and from same have discovered the fraud, in such case the pleading is still subject to exception on the ground that it shows the cause of action barred, unless plaintiff further allege facts sufficient to rebut and exclude any such inference or presumption.

It is believed that these conclusions are supported by the weight of authority and are sufficient to explain the reason for our action in sustaining the first assignment of error.

While there are assignments complaining of the overruling of special exceptions to plaintiff's pleadings, what we have said we think, sufficiently shows the disposition properly to be made of same if it were necessary to pass upon them. Assignment No. 1 under consideration is determined upon the assumption of the sufficiency of the pleadings.

■ The determinative question is, Does the undisputed evidence disclose that plaintiff, more than two years before the commencement of the suit, discovered the fraud constituting the alleged causes of action, or acquired knowledge of such facts as to put a reasonably prudent person upon inquiry, which, by the use of the means available, would have led to the discovery of the fraud? The jury found that plaintiff discovered the fraud on or about August 28, 1929, which was less than two years before commencement of the suit. If he did not make such discovery more than two years before the commencement of suit, it was a wholly immaterial issue when he actually made discovery. Therefore that finding of the jury can form no proper basis for the judgment. As to whether he exercised reasonable diligence to discover the fraud was likewise wholly immaterial. The issue was, Did he have knowledge of such facts, conditions, or circumstances as that a reasonably prudent person so situated would have discovered the fraud? We are forced to the conclusion that even that issue, under the undisputed evidence, was not an issue of fact for the jury. By plaintiff's own testimony it was shown that one of the alleged false representations which constituted a basis for each of the four causes of action was made on June 26, 1926, in part to the effect that defendant company would build bottling works in Dallas and Abilene. Plaintiff testified that he understood by that statement that such bottling works would be built within one year thereafter; that he believed from the representation that the bottling works would be built in that time, and, if he had not so believed, he would have had cause to doubt every representation made. His own testimony shows that about one year later he then knew that no bottling works had been built in Dallas or Abilene. In fact, his own pleadings show that more than a year later he claims to have relied upon the original representation in making further purchases of stock.

According to plaintiff's own testimony, more than two years before the commencement of suit he was told by Rogers, who had been instrumental in making the sales of stock to him, that he (Rogers) was ashamed of having sold him the stock; that the company had not performed its promises, and had falsely represented the fact that it owned bottling plants in the "Valley." This representation was one of those upon which one or more of the causes of action was based. This circumstance alone, we think, under authority of the decisions, as a matter of law, put him upon inquiry, which all the evidence shows that, by means available, he could have made full discovery of the alleged fraud.

Considerably more than two years before the commencement of suit the plaintiff went to San Antonio, the home office of defendant company, and undertook to make such an investigation of its assets, management, etc., as necessary to determine the desirability of making further purchases of the stock. It was on that occasion when he learned that the only bottling plant they had was one in San Antonio, and, while he testified to fur-

ther representations made him, he does not testify to any statement or representation designed or sufficient to explain why the bottling plants had not already been built in other places, and particularly Abilene, as he understood the former representations to mean.

Some of the representations' claimed to have been relied upon were in the nature of a guaranty of dividends. More than two years prior to commencement of the suit plaintiff learned that no cash dividend was being paid or had even been considered.

Plaintiff testified that the information which first caused him to suspect the falsity of any of the representations was his discovery in the summer of 1929 that no bottling plant had been built in Dallas. It is inconceivable that he did not know all along that no bottling plant had been built in Abilene, his home town, and that fact, we think, as a matter of law, put him upon inquiry, not only that there was no such plant in Dallas, but of all of the other representations relied upon.

It is therefore our opinion that the court below erred in refusing a peremptory instruction for the defendants, by reason of which the judgment should be reversed and judgment rendered for the defendants, which is accordingly so ordered.