### GRIFFIN v. LINN. (No. 2946.)

Court of Civil Appeals of Texas. Amarillo.
Jan. 18, 1928.

Rehearing Denied March 7, 1928.

1. **Abatement and revival ⟐81—Filing of controverting affidavit within five days after appearance day of succeeding term is timely, no default judgment being taken; "timely filing" (Rev. St. 1925, art. 2007).**

Where no default judgment is taken, filing of controverting affidavit within five days after appearance day of the succeeding term constitutes "timely filing," within Rev. St. 1925, art. 2007.

2. **Abatement and revival ⟐81—If no default judgment has been taken by plaintiff, plea of privilege filed during term is timely; "timely filing" (Rev. St. 1925, art. 2007).**

Where defendant is in default, but no judgment has been taken by plaintiff, a plea of privilege filed during term is timely filed, within Rev. St. 1925, art. 2007.

3. **Pleading ⟐111—Time and manner of hearing plea of privilege is within trial judge's discretion, and it may be heard in connection with trial on merits, unless defendant shows injury.**

Since no statute expressly requires trial court to determine plea of privilege in advance of trial on merits, matter of time and manner of hearing and determining plea of privilege is largely within trial judge's discretion, and if, in his opinion, it would be more convenient to hear plea in connection with trial on merits, such ac-

tion would not, in all cases, be error, but it would devolve on defendant to show injury.

4. **Pleading ⟐111—Controverting affidavit to plea of privilege should have been disposed of at succeeding term, unless hearing was prevented or waived.**

Where controverting affidavit to defendant's plea of privilege was filed at term case was returnable, it should have been disposed of at succeeding term, either on separate hearing or at trial on merits, unless court's business prevented its consideration or hearing at such time was waived.

5. **Pleading ⟐111—Plaintiff must show that court's business prevented consideration of plea of privilege at succeeding term, or that hearing was waived (Rev. St. 1925, art. 2007).**

Where controverting affidavit to defendant's plea of privilege was filed during term case was returnable, burden was placed on plaintiff, under Rev. St. 1925, art. 2007, to show that requirements of court's business prevented its consideration at the succeeding term, or that hearing at that term had been waived.

6. **Pleading ⟐111—Failure of plaintiff to account for court's delay in hearing on plea of privilege and controverting affidavit may be waived (Rev. St. 1925, arts. 2007, 2008).**

Where defendant filed plea of privilege to be sued in county of his residence, to which plaintiff filed a controverting plea, under Rev. St. 1925, art. 2007, failure of plaintiff to discharge his burden to account for trial court's delayed action on the plea and controverting affidavit, after other requirements of article 2008 had been fulfilled, could be waived by defendant.

7. **Pleading ⟐111—Objection to hearing on plea of privilege and controverting affidavit several terms after time required held waived by defendant's presentation of plea without objecting (Rev. St. 1925, art. 2007).**

Where defendant filed plea of privilege to be sued in county of residence, and plaintiff filed a controverting affidavit, objection that hearing and determination of plea and affidavit was had several terms later than term at which matter should have been disposed of, under Rev. St. 1925, art. 2007, was waived by defendant's failure to object to hearing at that time, and by his presentation of plea at such subsequent term.

8. **Pleading ⟐111—Controverting affidavit to plea of privilege held sufficient, though it referred to petition for grounds of cause of action.**

Where defendant filed plea of privilege to be sued in county of his residence on action based on false representations, controverting affidavit was not insufficient because it referred to plaintiff's petition for grounds of cause of action.

9. **Pleading ⟐111—To sustain venue against plea of privilege, plaintiff need show only that transaction allegedly constituting actionable fraud occurred in county of suit (Rev. St. 1925, art. 1995, subd. 7).**

To sustain venue as against plea of privilege, on allegation that action was based on

---

fraud perpetrated in county of suit, under Rev. St. 1925, art. 1995, subd. 7, plaintiff was not required to prove fraud, but merely to show that transaction which might constitute actionable fraud occurred in county of suit.

**10. Fraud ☞41—Petition in action for false representations in sale of stock in land corporation operating in Mexico held sufficient to sustain recovery.**

Petition charging that defendant induced plaintiff to subscribe and pay for stock of land corporation by false representations as to value of stock and land to be purchased by corporation, and that money received was not all used to buy land, *held* sufficient to sustain recovery of damages for false representations.

**11. Fraud ☞50—Party alleging fraud must show diligence in taking steps within reasonable time to expose it.**

Party alleging fraud must show diligence in taking steps within reasonable time to expose it.

**12. Appeal and error ☞1001(1)—Jury's finding that plaintiff was diligent in discovering fraud did not conclude reviewing court, if physical facts in evidence established contrary.**

In action for false representations made by defendant to plaintiff in 1909 in sale of stock in a land corporation operating in Mexico, fact that jury found that plaintiff was diligent in taking steps within reasonable time to expose fraud did not conclude reviewing court in finding to contrary, if physical facts in evidence established that plaintiff was not diligent.

**13. Fraud ☞22(1)—Purchaser of stock in land corporation held not entitled to recover for seller's fraud, since facts showed lack of diligence in ascertaining facts.**

Plaintiff, who in 1909 purchased stock through defendant in land corporation operating in Mexico, *held* not entitled to recover for seller's false representations in suit filed in 1926, since evidence showed lack of diligence on part of plaintiff in ascertaining facts of alleged fraud.

Hall, C. J., dissenting.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by Robert Linn against John R. Griffin. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with instructions.

Jas. A. Stephens, of Benjamin, and W. F. Kelly and J. Rob Griffin, both of Fort Worth, for appellant.

Bean & Klett, of Lubbock, for appellee.

RANDOLPH, J. This suit was instituted in the district court of Lubbock county by Linn, as plaintiff, against Griffin, as defendant, to recover damages for false representations alleged to have been made by Griffin to the plaintiff in the sale of stock in a land corporation operating in the Republic of Mexico. On trial before a jury, and on the verdict of the jury, the trial court rendered judgment for the plaintiff, and the defendant has appealed from such judgment. The parties will hereinafter be referred to as in the trial court, and such statements of the facts in the case will later be made as may be necessary to explain the questions being considered by us.

The defendant filed his plea of privilege to be sued in Tarrant county, the county of his residence. This plea was filed on appearance day of the term of court to which the suit was returnable. The plaintiff filed a motion in which he recited the inaccessibility of the plaintiff, the impossibility of the preparation and filing of a controverting affidavit within the five days allowed by the statute, and praying for an extension of time in which he might file said affidavit. In response to this motion, the trial court granted an extension of twenty days in which said affidavit might be filed. Thereafter, within the time so extended and at the same term of court, the controverting affidavit was filed. The hearing on the plea and affidavit was set down for hearing at the same term of court, but on request of the plaintiff it was passed to be heard with the trial of the case on its merits.

[1] The defendant properly excepted to the court's granting the extension of time which was granted to plaintiff to file said controverting affidavit on the grounds (1) that the affidavit was not filed within the time fixed by the statute; and (2) the trial court erred in setting the hearing and in hearing the motion and affidavit with the trial of the case on its merits. The decision of the defendant's first contention involves a construction of the language of the provision for controverting affidavits in article 2007, Revised Statutes, which is as follows:

"If the plaintiff desires to controvert the plea of privilege, he shall, within five days after appearance day, file a controverting plea under oath, setting out specifically the fact or facts relied upon to confer venue of such cause on the court where such cause is pending."

[2] We will not discuss the question of the power of the trial court to extend the time and permit the filing of the affidavit, for the reason, as we view it, the affidavit was filed in time. By the first clause of the article above referred to, relating to the filing of the plea of privilege, no time is named for the filing of same in the cause, and it has been held that, where the defendant is in default, but no judgment was taken by the plaintiff, a plea of privilege filed during the term was in time. Landa v. Moody (Tex. Civ. App.) 57 S. W. 51. See, also, Smith v. Citizens' National Bank (Tex. Civ. App.) 246 S. W. 407. This being correct, and the plaintiff not having taken judgment by default in that case, it would have been impossible for the

controverting affidavit to have been filed within the five days after appearance day of that term of court; hence the Legislature cannot have intended to refer to the appearance day of the term of court at which the case was returnable. The filing within five days after appearance day of the succeeding term, no default judgment having been taken, would have constituted a filing within the meaning of such article. Sibley v. Continental Supply Co. (Tex. Civ. App.) 290 S. W. 769, 770; Girvin v. Gulf Refining Co. (Tex. Civ. App.) 211 S. W. 330.

[3] This court has held that, there being nothing in the law which expressly requires the court to determine the plea of privilege in advance of a trial on the merits, the matter of the time and manner of hearing and determining the plea of privilege is largely within the discretion of the trial judge, and if, in his opinion, it should appear more convenient to hear such plea in connection with the trial of the case on its merits, such action would not, in all cases, be error. Wichita Mill & Elevator Co. v. Simpson (Tex. Civ. App.) 227 S. W. 352–354. It occurs to us that under the above decision it would devolve upon the defendant to show some injury, some reason why the court should not have heard the plea with the trial of the case on its merits, and that he was thereby deprived of some substantial right, impairing his ability to make a proper showing. Smith v. Citizens' National Bank, supra.

[4] As stated above, this case was returnable to the August term of court, and the controverting affidavit was filed at that time; hence it should have been disposed of at the succeeding term, either on a separate hearing or in connection with the trial on the merits, unless the business of the court prevented its consideration or the hearing at such time was waived. Austin Bridge Co. v. Wren (Tex. Civ. App.) 297 S. W. 654. This last case impliedly limits the expression "the time" of the hearing, as used by this court in the Simpson Case, supra, to some time during the next term of the trial court.

[5] If the plea of privilege and controverting affidavit must be disposed of at the next succeeding term of court, the burden is placed, by force of the article, upon the plaintiff to show that the requirements that the business of the court prevented its consideration at that term of the court, or that a hearing at that term of court was waived. Austin Bridge Co. v. Wren, supra; Littlefield. State Bank v. Moore (Tex. Civ. App.) 257 S. W. 1007.

[6] Article 2008 provides that, upon the filing of such controverting plea, the court shall note on same a time for hearing of such plea. Such hearing, unless the parties agree upon the date, shall not be had until a copy of the controverting plea, including a copy of such notation, shall have been served on the defendant for at least ten days, after which the court shall promptly hear same and enter judgment thereon. There is no question before us as to the matter of service of notice of a setting of such hearing. It appears from the record that the plea of privilege was filed in the trial court on the 14th of August, 1926; that on the 20th of August, 1926, the plaintiff filed his motion for an extension of time in which to file his controverting affidavit, and the order of the court granting same was entered on the minutes of the court on the same day. On August 28, 1926, the plaintiff filed his controverting affidavit, and the court thereupon set the hearing of same for 9 o'clock a. m. on the 10th day of September, 1926, which was a day of the August term, 1926. Nothing further is shown to have been done in the matter of the plea of privilege and controverting affidavit until April 23, 1927, when the defendant filed certain exceptions to the plaintiff's controverting affidavit. On April 25, 1927, the trial court entered its order, overruling the defendant's exceptions to said affidavit, and on the 25th of April, 1927, entered its judgment, granting plaintiff the relief prayed for by him, in which judgment the following is recited:

"Be it remembered that on the 25th day of April, 1927, came on to be considered the above styled and numbered cause, and came the plaintiff, Robert Linn, in person and by attorneys, and announced ready for trial, and came also the defendant, John R. Griffin, in person and by attorneys, and presented his plea of privilege to have the cause transferred to the district court of Tarrant county, Texas, and the plaintiff presented his controverting affidavit, claiming the right to maintain the venue of said cause in the district court of Lubbock county, Texas, and plaintiff requested the court to try the plea of privilege with the main case when tried on its merits, which request was granted. Whereupon the defendant, without waiving his plea of privilege, filed his answer. * * *"

While the burden was on the plaintiff to account for the delay in the matter of the trial court's action on the plea of privilege and the controverting affidavit, the failure on his part to do so could have been waived by the defendant. Not only was there no objection made to the court's consideration of the matter of the plea of privilege and controverting affidavit at a term subsequent to the term upon which it should have been presented, but the above judgment recital shows that the defendant was there presenting his plea for the court's consideration.

[7] The defendant here insists that, while he only objected to the trial of the plea of privilege with the case on its merits, it was fundamental error on the part of the trial court to hear and determine the plea and controverting affidavit at a term that was several terms later than the term at which it should have been disposed of, and therefore he asks that the judgment herein rendered

be reversed and the case ordered transferred to the district court of Tarrant county. We are compelled to deny this request for two reasons: (1) The hearing upon the plea of privilege and affidavit, at a term subsequent to the term at which they should have been disposed of, is a proceeding that could have been waived; and (2) by his request that the trial court hear his plea at the time he did hear it the defendant waived such error, if any.

[8] The defendant's exception that the controverting affidavit was not in due form of law, because it referred to the plaintiff's petition for the grounds of the cause of action, was properly overruled. Perkins v. Texas Bank & Trust Co. (Tex. Civ. App.) 230 S. W. 736. The defendant contends that the jurisdictional facts, as alleged in the petition, even if taken as true, are insufficient to confer on the district court of Lubbock county jurisdiction of this case as against the appellant's plea of privilege. The analysis of the plaintiff's petition by the defendant in his brief is as follows:

"It is alleged in the petition that in 1909, 1910, and subsequent thereto, the defendant, in Lubbock county, Texas, represented to the plaintiff:

"(1) 'That there was a tract of some 53,150 acres of land in Mexico that could be bought for $5 per acre, American money,' the truth of which is admitted, even if material.

"(2) 'That an investment in the proposed $250,000 corporation to be formed for the purpose of buying said land would be highly remunerative,' an opinion or prediction which cannot be made the basis of an action for fraud.

"(3) 'That the land was in the state of Vera Cruz, between and riparian to two navigable rivers, very rich and productive, every day growing day, and every month harvest month.' This alleged representation is likewise true, besides being immaterial.

"(4) That defendant (appellant) had subscribed and paid for $50,000 worth of stock in the said corporation.

"(5) That $150,000 of the stock had been subscribed and paid for in American money.

"(6) That this money would be used in paying for the land at a cost of $5 per acre. A promise to do something in the future, with no allegation that it was made with no intention of performance.

"(7) That upon these representations the defendant solicited the plaintiff to invest, and the plaintiff did invest, $5,000 for stock in the proposed corporation."

[9] In order for the venue to be sustained, as against a plea of privilege, on the allegation that it was an action for fraud perpetrated in the county in which a suit was brought, under subdivision 7 of article 1995, Revised Statutes, the plaintiff was not required to prove the fraud, but merely to show that a transaction which might constitute an actionable fraud occurred in the county where the suit was filed; the question of whether plaintiff sustained an injury and the extent of such injury being the matters to be determined on the trial on the merits. Edmonds v. White (Tex. Civ. App.) 226 S. W. 819.

The questions concerning the running of limitation, of the discovery of the alleged fraudulent acts, and when the plaintiff came into possession of the knowledge of facts which should have caused him to diligently prosecute an investigation into such alleged fraud, if he did come into knowledge of same, will be discussed in connection one with the other.

[10] The plaintiff alleges the following false and fraudulent representations by the defendant in the year 1909: That there was a tract of some 53,150 acres of rich agricultural land in the tropics of the republic of Mexico that could be bought for and would cost $5 per acre, American money; that it would be a highly remunerative investment for the plaintiff and others to subscribe and pay for shares of stock in a company to be organized, with a capital stock of $250,000 or more, to be used in buying and paying for said land; that the company would be incorporated on the payment of $150,000 or more of the capital stock; that the defendant would also subscribe and pay for $50,000 worth of stock in said company; that the stock would be $1 per share, and sold for $2 per share; that the defendant represented that said land was situated in the state of Vera Cruz, republic of Mexico, about 30 miles from the Gulf, and had a navigable river frontage of about 30 miles, a greater portion of which was on the largest river in the republic, and the remainder on a river on the east, and 10 to 15 miles from the Vera Cruz Railroad on the south; that the defendant represented that $150,000 or more of the capital stock had been subscribed and fully paid for in American money, and that same would be used in acquiring and paying for said land at a cost of $5 per acre, American money; that he had subscribed and paid for $50,000 worth of the stock in the company; that the land was worth and had cost $5 per acre, American money. Further that the capital stock was not used to buy land, not over $20,000 was used for that purpose; that not more than one-half of that amount was paid, the amount that was actually paid being the money furnished by plaintiff and others in Lubbock, Linn, and Crosby counties; that the defendant falsely and fraudulently concealed from the plaintiff that he and his confederates caused said stock to be watered, the company rendered impotent, and its assets fictitious, in that the defendant and his confederates, who had subscribed for a part of the capital stock, secretly caused part of said stock, to the amount of $80,000, to be issued and delivered to themselves without payment therefor, and further falsely and fraudulently concealed from the plaintiff that

the alleged price of $5 per acre was a bogus and fictitious price, when the land was only costing $3.50 per acre.

The defendant interposed his plea of limitation to the plaintiff's cause of action, alleging that same was barred because of the lapse of years between defendant's acquisition of knowledge of the falsity of such representations and the filing of this suit. The trial court submitted the case to the jury upon the following issues:

"Special issue No. 1: Did the defendant, Griffin, as a material inducement to plaintiff, misrepresent material facts relating to the American-Mexico Land & Cattle Company, to the plaintiff, Linn, in Lubbock county, Texas, or fraudulently conceal the same from plaintiff? Answer 'Yes' or 'No.'

"If your answer is negative, then you need not answer the following questions. If you answer in the affirmative, please answer special issue No. 2.

"Special issue No. 2: Did plaintiff become aware of and advise himself as to such misrepresentations and fraudulent concealments, if any, prior to two years before filing this suit on July 23, 1926. Answer 'Yes' or 'No.'

"If your answer is affirmative, then you need not answer the following questions. If you answer in the negative, please answer special issue No. 3.

"Special issue No. 3: Did plaintiff use due diligence, or such diligence as an ordinarily careful and prudent person would have exercised under the same or similar circumstances, to discover such misrepresentations and fraudulent concealment, if any, prior to two years before filing this suit, on July 23, 1926? Answer 'Yes' or 'No.'

"Special issue No. 4: What was the value, if any, of the stock in question, at the time of its purchase by plaintiff, Linn? Answer as you may find.

"Special issue No. 5: How much exemplary damages, if any, do you find in favor of plaintiff? Answer as you may find.

"In connection with special issue No. 5, you are instructed that you cannot find exemplary damages in this case unless you first find that the defendant, Griffin, willfully and intentionally made to the plaintiff, Linn, misrepresentations of material facts, as a material inducement to plaintiff, or that he fraudulently concealed the same."

The jury answered the first question "Yes," the second "No," the third "Yes," the fourth "$1,250," and the fifth "$7,000."

In our opinion, the pleading of plaintiff was sufficient to sustain a recovery (Griffin v. Burrus [Tex. Civ. App.] 292 S. W. 561), and also that the evidence abundantly supports the pleadings, hence we do not deem it necessary to discuss same, but will pass to the consideration of whether or not the plaintiff came into possession of knowledge of such facts as would have put him on inquiry as to the falsity of such representations at such time as to bar his cause of action. In this connection we must consider the question solely from the standpoint of whether or not

the evidence supported the verdict of the jury. If there was evidence to support the finding of the jury that the defendant did not become aware of such fraud and fraudulent concealments prior to two years before the filing of the suit on July 23, 1926, and their further answer that the plaintiff did use due diligence, or such diligence as the ordinarily careful and prudent person would have exercised under the same or similar circumstances to discover such misrepresentations and fraudulent concealments prior to two years before the filing of this suit, then we must overrule defendant's plea of limitation. In order that our holding on this question may be thoroughly understood, we will discuss the evidence bearing upon it at length.

The transaction in which the plaintiff was induced to spend his money with the defendant occurred in the year 1909. This suit was filed in July, 1926, more than 17 years thereafter. This length of time having expired between the original transaction and the filing of the suit, we cannot presume that the plaintiff had continued in ignorance of the real facts, but the evidence must show clearly that he was in ignorance, and that he violated no duty in postponing his attempt at recovery of the money, of which he alleges he was defrauded.

The plaintiff, at the time of the original transaction, lived on his ranch 22 miles northeast of Lubbock. He had lived on this ranch for 33 years, until 1918, when he moved to Arkansas, where he was residing at the time of the filing of the suit. He became acquainted with the defendant in 1909, and closed the transaction for the stock in the corporation to be organized for the purchase of the lands in Mexico, and paid to the defendant the sum of $5,000. After the purchase of the stock by the plaintiff, he and other stockholders went down to look after the land. The plaintiff and J. R. Burrus, in 1911 or 1912, made a trip to Itasca with Judge I. W. Stephens, of Fort Worth, and plaintiff says that they went to attend a stockholders' meeting down there, and that they wanted to find out something, and took Judge Stephens with them, and that Stephens said he could not find out anything. Plaintiff and Burrus talked with Judge Stephens before they went to Itasca. They met the defendant at Itasca. Plaintiff testifies:

"While we were in Itasca, we were down there at Griffin's house most of the time. We ate dinner there. We didn't go up-town until we got ready to leave there. I think it was along in the evening sometime when we left there. At this meeting there at Griffin's house, Mr. Burrus and myself and this lawyer from Fort Worth were present. Mr. Griffin was there. There wasn't anybody else there that I recall now. There might have been somebody came from town with some books to show us. I don't think I saw any books. I think Judge Stephens called for some books. I don't re-

member Judge Stephens having some books in his hands, and asking Mr. Griffin about various entries in this book. I don't remember that there was anybody else present that Judge Stephens talked to about the entries in the book. I don't think Mr. Griffin and Mr. Stephens and Mr. Burrus said that Kent got $80,000 in stock in the company for his services in negotiating the purchase of this Mata de Agua land, I don't think I ever heard that.

"After we left Itasca, we went back to Fort Worth. I don't know how long we stayed in Fort Worth; don't know whether he left there that night or the next morning. We wanted Judge Stephens to find out something about our business; we took a lawyer along to the meeting; we just went down and got him to go with us. As to whether there were any other stockholders present at that meeting besides Mr. Burrus and myself and Mr. Griffin, I don't know whether Mr. Hardy was along or not; it just struck me that maybe he was, I won't say for certain; it just strikes me like he was, I think so. I don't think we wanted Judge Stephens to bring a suit against Mr. Griffin; we just took him along to see whether or not he could find out anything about it; looked like we wasn't getting anywhere.

"I think he told us there was something against this land. In 1910 I think he wrote and told me there was debts against this land. I don't recall that he told me that the stock hadn't been subscribed in 1910. As to whether on December 29th he told me, 'When we get the full $250,000 paid in, will then change the capital, and issue you 2,500 more shares without further payment,' I don't recall whether he made that statement to me on December 29, 1910. I don't recall that Judge Stephens told me that he wouldn't bring the suit, because he didn't think he could get any money out of Griffin. If he had made a statement like that, I don't know whether I would remember it or not. As to whether, when I left Itasca, I thought that Griffin was in a prosperous condition, or whether I thought he was broke, I didn't know anything about his business. After I got there with Judge Stephens, we didn't talk to any other lawyers in Fort Worth. As to whether we talked to a man by the name of Goree, that was the man that was in the office with this man that was with us. If his name was Miller, I never talked to anybody else that I remember. Stephens is the man we saw. I can't tell you how we came in contact with Judge Stephens. I didn't know him before we went down there, I think maybe Mr. Burrus did. I never had any correspondence with Judge Stephens, after I left Fort Worth. After I left Fort Worth, I came back to Estacado."

It appears that after this trip to Itasca nothing more was done towards an investigation by the plaintiff until 1918, six or seven years later. Plaintiff further testifies:

"I talked to Mr. Klett before I left here. I moved away in 1918; sometime about that time I guess it was that I talked to Mr. Klett, maybe a little before that. * * * I think I talked to Judge Klett one other time, I don't know just when it was; it was before I moved away from here. * * * I never wrote any letters to any of the officers of that [company] to find out about its affairs. As to whether I ever tried to find anything about it, I never wrote any letters. I think from 1910 to 1918, during that period of time, I think I talked this company over with Mr. Burrus.

"We talked it over, I think. I guess I talked to Mr. Hardy about it. I didn't talk to Mr. Cowan about it. I didn't talk to the Millers about it. I don't think I ever saw a one of them, since they came back, that I recall. * * * I never did get any dividends from this company, and nobody ever offered to buy my stock. I don't know whether it had any effect on the value of the stock that Mexico was in a condition of revolution. I guess that I just concluded that I had lost my money and attempted to forget about it. Well, no; I wouldn't have forgotten it, if I hadn't got this letter from Mr. Klett. As to whether it was fresh in my mind, it just appeared to me like I had lost my money; that's all. As to whether I had done anything from 1910 up until the time I got that letter from Mr. Klett about seeing about my investment in this company, I went to Fort Worth, you know, and I met Mr. Klett over here, and talked to him about it. I told him I wished he would investigate it anyway, sometime. He didn't know whether he could find out anything about it, or not. He appeared to be very busy. I know I went to him and Mr. Bean, and asked them to investigate it; but they did not, so far as I know. I do not know how long they had been investigating this matter. * * *

"I stated yesterday that Mr. Burrus and myself, and perhaps Mr. Hardy and Judge Stephens, went to Itasca some time in 1911 or 1912, and took dinner with Mr. Griffin at his home. I don't know as I told Mr. Griffin at that time that I thought I had been cheated or swindled out of my money; don't know that I told him in those words or not, but I told him it looked like we wasn't getting anything, and we would like to know something about it—something to that effect. As to whether I told him we had brought this lawyer down there to get this information, I guess he knew that. We hired Judge Stephens to go down there with us. We didn't know that we had been defrauded out of our money. I don't recall what we told him before retaining him to go down there to make this investigation for us. We probably told him something of it. I don't recall. I don't know that I told him in those words that I told Mr. Griffin that I thought I had been cheated or swindled out of my money. I don't recall what I told him it has been so long ago, I don't recall very well."

Judge E. L. Klett testified:

"My name is E. L. Klett. I am a member of the firm of Bean & Klett, attorneys. There has been some testimony with reference to my employment, or the employment of the firm of Bean & Klett, by Mr. Linn. With reference to this matter, my best recollection is that, about 10 years ago, some of the stockholders, or men who said they were stockholders, in the American-Mexico Land & Cattle Company, came into our office. There were two or three of them, at this time; I think Mr. Linn was one; I think, I am reasonably sure, he was. I think they were looking for Mr. Bean. Mr. Linn said he had known Mr. Bean 25 or 30 years; but, as I recall, Mr. Bean was out at the time; anyway, they talked to me, said they had purchased some stock in that company be-

fore that, and had been trying to get some information concerning it, and hadn't been able to do so. They were dissatisfied, at least they appeared to be dissatisfied, and wanted us to see what we could find out about it—what we could do about it.

"I took down on a yellow sheet of paper the names of the stockholders and the name of the company, when it was organized, the number of acres in the ranch, and such information as they could give me concerning the organization of it and the manner in which the subscriptions were taken. I kept that memorandum in my desk for several years. I threw it away, I guess, when I went up to Amarillo for a few months in 1923. I think I threw that memorandum away at that time in cleaning out my desk." (This testimony refers to the employment of his firm in 1918.)

"I don't think I talked with Mr. Linn from 1918 up until the time I took this controverting affidavit in this suit. I hadn't talked to him since that time. I hadn't been carrying the allegations as to what Griffin told Linn in my mind from 1918; I don't know that I had, I don't remember just what Mr. Linn told me regarding the representations, but one or two of the stockholders were in the office, and told me generally the representations that had been made. Of course, they didn't know, and I didn't know, whether they were true or false. I don't recall any conversations I had with Mr. Linn from 1918 up until the time I took his controverting affidavit. I prepared this petition. The allegations in here are the allegations which I prepared, from such information as I obtained, and such facts as I remembered from my prior conversation with Mr. Linn."

From this statement, it will be seen that suspicion had lodged in plaintiff's mind, causing him to employ an attorney to investigate into the condition of the land company. Can it be said that a complete investigation made at that time (1911–1912) would not have developed the facts as they were developed by the investigation made in 1925 or 1926? We think not. At the time Judge Stephens went to Itasca, it is not shown that the defendant suppressed anything material to such investigation, and there is no evidence that at said time the defendant concealed any material fact, the then knowledge of which would have led to the disclosure of all the material facts presented by the plaintiff here as his cause of action, and defendant did not deny or affirm the original representations charged.

[11] The next move made by the plaintiff was in the year 1918, when he employed Judge Klett. This was six or seven years after the investigation by Judge Stephens. Judge Klett let the matter rest from 1918 to 1926 without filing a suit in plaintiff's behalf until the last named year. We cannot conceive that it ever was the purpose of the court to lay down a rule of conduct that would enable parties to make partial investigations from time to time and then to permit the filing of such a suit as this, after such a lapse of years, in which all evidence of the transaction might have become lost. There is a diligence required of the party alleging fraud to take steps within a reasonable time to expose the fraud that was practiced upon him.

[12, 13] The fact that the jury found that the plaintiff was diligent does not conclude this court in finding to the contrary, if all the physical facts introduced in evidence establishes the contrary. United Land & Irrigation Co. v. Fleming (Tex. Com. App.) 239 S. W. 610–612. The physical facts—the long delay in bringing the suit, the employment of attorneys to investigate, the fact that Burrus and the plaintiff discussed the matter, the plaintiff's visit to the land—all indicate a knowledge of the conditions and lead to the irresistible conclusion that plaintiff was possessed of such knowledge as required of him, as an ordinarily prudent man, that he act in the matter. This, at least, is true from the date of his employment of Judge Klett in 1918. Wortman v. Young (Tex. Com. App.) 235 S. W. 559–562.

"Neither fraud alone nor ignorance of its existence will prevent the statute of limitation from running. The ignorance which effects such a result must be attended with such concealment of the fraud as will prevent its discovery by the exercise of reasonable diligence. Calhoun v. Burton, 64 Tex. 516; Standford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 452; Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 347, and authorities cited." Prosser v. First National Bank (Tex. Civ. App.) 134 S. W. 781–784.

The fact that the plaintiff had confidence in the representations made by the defendant, and in the defendant, is no excuse for the lack of diligence shown in this case. Standford v. Finks (45 Tex. Civ. App. 30, 99 S. W. 452), supra.

There are many assignments and propositions submitted on this appeal which we do not deem it necessary to consider, in view of our disposition of this case.

For the reason that the evidence discloses a total lack of diligence on the part of the plaintiff in ascertaining the facts of the alleged fraud of defendant, we reverse the judgment of the trial court, and remand the case to that court, with instruction that, in the event no further evidence is produced by the plaintiff on another trial, showing a greater degree of diligence than was shown on this trial, the trial court shall instruct the jury to bring in a verdict for the defendant.

HALL, C. J. (dissenting). As shown by the majority opinion, the jury found, in answer to the first, second, and third issues, that Griffin was guilty of fraudulently misrepresenting material facts, which induced plaintiff to enter into the contract, the plaintiff did not become aware of and advise himself as to such misrepresentations and fraudulent concealments prior to two years before

filing the suit, and that he had used due diligence, under all the facts and circumstances, to discover the real facts of the transactions.

The evidence is conflicting upon these issues, but I think is sufficient to sustain the jury's findings, and I do not concur in the conclusion reached by the majority upon the issue of limitation. I think, under all the evidence, the case upon the issue of limitation, upon which issue it has been decided, is controlled by the rules announced in the cases of Deaton v. Rush (Tex. Com. App.) 252 S. W. 1025, and Al Parker Securities Co. v. Owen (Tex. Com. App.) 1 S.W.(2d) 271, and the line of decisions and authorities which these cases follow.

For these reasons, I respectfully dissent.

## On Motion for Rehearing.

RANDOLPH, J. We have not held, in our original opinion in this case, that limitation had run against the claim of plaintiff, but did hold that the evidence was wholly insufficient to show diligence on the part of the plaintiff in asserting his claim of fraud, and in taking steps to protect himself. The appellee earnestly urges that we erred in taking mere suspicions for knowledge of facts. We have considered the whole record, and from this record we are persuaded that facts were brought to the knowledge of the plaintiff, sufficient to have put him on inquiry, and that it is not mere suspicion that we are considering.

For one thing, the agent who made the sale to the American-Mexico Land & Cattle Company, the corporation around which this litigation centers, was named Rafile Perez, and he resided at Tlacotalpan, state of Vera Cruz, Mexico. The plaintiff knew that this was the man who acted in the matter, for he met him in Mexico. This agent, so far as the record discloses, never suppressed any information bearing on the deal. When Judge Klett wrote to him in 1925, Perez immediately answered his letter and furnished him with all the information called for, freely and fully. This information, therefore, could have been obtained by the exercise of a little diligence and the expenditure of a few stamps in 1918, as well as in 1925. Again, the record does not disclose that Judge Klett did not have the information given him by the plaintiff and others in 1918, just the same as he had in 1925. As stated, Judge Klett was employed in 1918, after consultation with the plaintiff, and receiving the information plaintiff had, but Judge Klett had no further communication with the plaintiff for some seven or eight years, when he wrote the plaintiff and mailed him a copy of the written contract of employment, for his signature, at his residence in Arkansas.

The physical facts, the lapse of time, the partial investigations made from time to time, and the fact that no effort is shown on the part of the defendant to thwart such investigations, and the knowledge of the facts stated in the original and this opinion by the plaintiff, lead us to the conclusion that the plaintiff did not use ordinary diligence in attempting to discover the fraud alleged to have been practiced on him.

Hence we overrule the motion for rehearing.