JACKSON v. UNITED PRODUCERS' PIPE LINE CO. et al.

No. 12347.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 1, 1930.

Rehearing Denied Dec. 6, 1930.

A. H. Kirby, of Abilene, Conner & McRae, of Eastland, J. Rupert Jackson, of Baird, and Turner, Seaberry & Springer, of Eastland, for appellant.

Hiner & Pannill, of Fort Worth, for appellees.

DUNKLIN, J.

On April 16, 1917, J. W. Langford and wife, Letha Langford, executed to J. W. Lynch an oil and gas lease on 125 acres of land in Eastland county. In that lease a royalty interest of one-eighth of the oil to be produced was reserved by the grantors. The interest so reserved by the lessors was an interest in realty, and the same is true of the leasehold interest conveyed to Lynch, as is well settled by the decisions of the Supreme Court of this state, as shown in Hager v. Stakes, Tax Collector, 116 Tex. 453, 294 S. W. 835, and numerous decisions there cited. The legal effect of that conveyance was to vest in Lynch and his assignees seven-eighths of the oil to be produced from the land and to reserve to the lessors one-eighth of the oil.

On January 31, 1918, J. W. Lynch transferred and assigned the lease so held by him to the States Oil Corporation.

On November 15, 1918, J. W. Langford and wife executed to Frank Traywick their warranty deed of conveyance of the fee-simple title to 40 acres of land out of the east portion of the tract described in the lease to Lynch. By virtue of the warranty of title, that conveyance carried with it the one-eighth royalty interest in the oil theretofore reserved by Langford and wife in the tract so conveyed to Traywick.

On December 21, 1918, Traywick conveyed to I. N. Jackson a one-sixteenth interest in all the oil and gas and other minerals in that 40 acres of land. The conveyance recites that it was made subject to the original lease noted above in favor of J. W. Lynch, and that it covers and includes one-half of the oil royalty to be paid under the terms of that lease, with a further recital that, in the event that lease should be canceled or forfeited, then "the lease interest and all future rentals on said land for oil, gas and mineral privileges shall be owned jointly by grantors and grantee, each owning the proportional one-half interest in all oil, gas and other minerals in and upon said land, together with the proportional one half interest in all future rents."

On May 3, 1919, Frank Traywick and wife executed a deed of conveyance with warranty of title to J. W. Langford of the same 40-acre tract. That conveyance contained this recital: "This conveyance is made subject to an oil and gas lease thereon, but covers and includes all royalties under said lease not heretofore sold and conveyed by the grantor herein."

After the execution of that lease, there was left in J. W. Langford and I. N. Jackson each an undivided one-sixteenth interest in the oil and gas; in other words, each owned a one-half of the one-eighth royalty interest reserved by Langford and wife in the original lease to J. W. Lynch.

On September 25, 1919, a judgment was rendered in the district court of Eastland county in a suit wherein J. W. Langford and three of his minor children, heirs of his deceased wife, Mrs. Letha Langford, were plaintiffs and the States Oil Corporation was defendant. The petition in that suit does not appear in this record, but testimony introduced shows that the suit was instituted against the States Oil Corporation to cancel the original lease. That judgment contains the following recitals:

"It is the opinion of the court that the law of the case is with the defendant and that the defendant, The States Oil Corporation, should have judgment validating the lease dated April 16, 1917, signed by J. W. Langford and wife, Letha Langford, and also by Jas. W. Lynch and by his agent, L. H. Wentz, and witnessed by F. E. Day, W. A. Martin and W. W. Fambrough, and that said States Oil Corporation should assign and transfer 60 acres off the east side of said tract of land unto Carl P. Springer, for the use and benefit of the community estate of J. W. Langford and Letha Langford, deceased.

"It is therefore, ordered, adjudged and decreed by the court that the defendant, The States Oil Corporation, do have and recover of and from the plaintiffs J. W. Langford, Lois Langford, Grace Langford, Murel Langford, the last three of whom are minors, the title for oil and gas purposes, of the lease on the following described tract of land, towit: (Here follows field notes of 56 acres of west portion of the 125 acre tract.)

"It is ordered, adjudged and decreed that the said lease of date April 16, 1917, covering 116½ acres of land, of which the above field notes is a corrected survey, containing 125.8 acres instead of said 116½ acres, be, and the same is in all things validated and decreed a valid and binding lease for the full space and term of five years from the date of said lease, subject to the payment only of the annual rentals of $1.50 per acre, and the same is decreed to be valid and binding upon all parties inheriting through Letha Langford, deceased.

"It is further ordered that the States Oil Corporation, defendant herein, assign to Carl P. Springer, attorney for the plaintiffs, the following described tract, being 60 acres, more or less, off the east side of the hereinbefore described tract, after deducting 65 acres situated on west side of this tract, the title to

which is confirmed, towit: (Here follows description of the east 60 acres of the 125.8 acres tract.)

"It appearing to the court that the plaintiffs and defendants having agreed to the above judgment and division of the land in controversy, and it further appearing that the above is fair and equitable, it is therefore the order, judgment and decree of the court that said lease on said 65 acres of land be, and the same is validated and the title to same be decreed in said States Oil Corporation, subject only to the payment of the rentals of $1.50 per acre per year as stipulated in the lease of date April 16, 1917, covering said 65 acres only, and that the said States Oil Corporation do assign the hereinbefore described 60 acre tract to Carl P. Springer, according to the agreement of the parties hereto."

A plea of intervention was filed in that suit by I. N. Jackson on October 3, 1919, which was six days after the judgment was entered, in which the pleadings of plaintiffs were adopted by the intervener, and based thereon the intervener asked for a cancellation of the oil lease on the 40 acres described in the conveyance from Frank Traywick to him.

On October 25, 1919, one month after the date of the judgment noted above, the court entered an order permitting the intervener to withdraw his plea of intervention. It is to be noted here that the judgment already entered did not purport to fix the rights of any parties except the plaintiffs and the defendant States Oil Corporation. On September 27, 1919, two days after the rendition of the judgment mentioned and some 27 days before the plea of intervention was withdrawn, the States Oil Corporation executed to Carl P. Springer, as trustee for the use and benefit of J. W. Langford and the minor heirs of Mrs. Letha Langford, deceased, an assignment of the original oil and gas lease in favor of J. W. Lynch to 60 acres out of the east portion of the tract covered by that lease, in compliance with the court's decree.

On December 1, 1919, Carl P. Springer, J. W. Langford, and Frank Traywick executed to I. N. Jackson an assignment of said original lease on 14 acres out of the 40 acres described in the conveyance to him by Traywick, of date December 21, 1918, and which 40-acre tract was included in the 60 acres set apart to J. W. Langford and his children in the judgment referred to above.

Prior to the assignment last mentioned, Carl P. Springer, as trustee for J. W. Langford and his minor children, had assigned to Barney Carter the leasehold evidenced by the original lease of Langford and wife to Lynch on a ten-acre tract out of the 40-acre tract, mentioned above and lying immediately south of the 14 acres assigned to I. N. Jackson by the last above mentioned deed.

Barney Carter drilled a well on the 16-acre tract lying north of said 14 acre tract, and sold the oil therefrom to the United Producers' Pipe Line Company. On February 2, 1923, I. N. Jackson served notice on the pipe line company of the assignment to him by Traywick of a one-sixteenth royalty interest in that oil, and demanded payment of the same to him, which demand was duly respected by that company. Prior to that notice, the full one-eighth royalty had been paid to J. W. Langford.

This suit was instituted by I. N. Jackson against the United Producers' Pipe Line Company and J. W. Langford to recover $2,000, the market value of 1,000 barrels of oil that had been taken from the well prior to the notice upon allegations that, by virtue of his deed from Frank Traywick, he was the owner of a one-sixteenth interest in and to all the oil produced from the land, and that defendants had taken therefrom 16,000 barrels of the value of $2 a barrel, or $32,000 in the aggregate, and had converted the same.

The United Producers' Pipe Line Company filed an answer, consisting of a general demurrer and a general denial of the allegations in plaintiff's petition. There was a further pleading by it, setting up the original lease from J. W. Langford and wife to J. W. Lynch, covering the land from which the oil was produced, and according to the terms of which one-eighth of all the oil produced was to be turned over to the lessors in the absence of written notice filed with the lessee of an assignment thereof to others; that one-eighth of said oil was turned over to J. W. Langford, the representative of the community estate of himself and wife, Letha Langford; that the one-eighth royalty interest was the community estate of said J. W. Langford and wife; that the royalty was so paid over to Langford without any notice or knowledge that plaintiff I. N. Jackson had any claim to or interest in it, and upon the guaranty and representation of J. W. Langford that he was the owner and had the right to the entire royalty; and the facts so alleged were made the basis for a plea over against Langford for any recovery which plaintiff might be awarded against the United Producers' Pipe Line Company.

J. W. Langford filed a plea of privilege to plaintiff's suit and also a plea of privilege to the plea over against him by the United Producers' Pipe Line Company. He also filed an answer to plaintiff's suit, with a special plea alleging a parol agreement of partition between him and plaintiff, by the terms of which plaintiff relinquished to him all interest in the land on whch the well in controversy was drilled. He also filed an answer to the cross-action of the United Producers' Pipe Line Company, and a plea over against the pipe line company and plaintiff for the value of 417.73 barrels of oil, the royalty interest produced from the lease and included in the 2,000 barrels for which plain-

tiff sued. The United Producers' Pipe Line Company filed an answer to that plea also.

The case was tried before the court without a jury. The two pleas of privilege filed by J. W. Langford were overruled and judgment was rendered in favor of I. N. Jackson against J. W. Langford for the sum of $1,-904.05, representing one-half of the royalty of oil for which plaintiff sued, and alleged to be 1,000 barrels of the value of $2,000. Judgment was also rendered denying plaintiff, I. N. Jackson, any recovery against the United Producers' Pipe Line Company; also denying the latter company any recovery on its cross-action against Langford, and on its cross-action against Jackson, and denying Langford any recovery on his cross-action against the United Producers' Pipe Line Company and I. N. Jackson.

From that judgment separate appeals have been prosecuted by plaintiff, I. N. Jackson, by defendant J. W. Langford, and by the United Producers' Pipe Line Company; assignments of error by the latter company being in the event only it should be held that plaintiff had the right of recovery against it, in which latter event it should be awarded a recovery over against Langford.

We shall now discuss appellant Langford's assignment of error to the action of the court in overruling his plea of privilege as against plaintiff's suit.

The plea of privilege was heard at the same time the case was tried on its merits, and the following was copied from the beginning of the statement of facts appearing in the record: "After all parties had announced ready for trial both on the pleas of privilege filed herein and on the merits, it was agreed in open court by all parties that the court could hear and determine all matters, including the pleas of privilege in one hearing, and that all evidence introduced on all issues might be incorporated in one statement of facts."

It was alleged in plaintiff's petition, and also proven, that defendant Langford was a resident citizen of Kent county at the time the suit was brought, and, since his plea of privilege was in statutory form, the burden was upon plaintiff to show that venue as to him was properly laid in Tarrant county, where the suit was instituted.

Article 1995, Rev. Civ. Statutes of 1925, reads:

"No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases: * * *

"4. If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. * * *"

Plaintiff sought to show venue under that exception to the statutes.

If, as alleged in plaintiff's petition, he was the owner of the oil taken from the lease and for which he sought a recovery, and if, as alleged in his petition, the defendant Langford and the United Producers' Pipe Line Company wrongfully converted the same to his own use, then plaintiff had the right to treat such conversion as a tort and sue to recover therefor of both defendants, and in that event he would have the right to maintain suit against the pipe line company and Langford in Tarrant county, where the pipe line company had an office and place of business, as alleged in the petition and as shown by the evidence. But if the proof showed that the pipe line company was not guilty of any wrongful conversion, then Langford's plea of privilege to plaintiff's suit should have been sustained, since the only ground for holding venue against Langford was the allegation that the pipe line company, the resident defendant, was a joint tort-feasor with him. See Richardson v. Cage Co., 113 Tex., 152, 252 S. W. 747.

In the trial of the case, plaintiff himself introduced all of the deeds recited above, and according to which title to a one-sixteenth interest in the lease from which the oil in controversy was taken was owned by him at the time of such taking, and that title also carried with it the ownership of that portion of the total production of the well. Plaintiff's title came through successive conveyances from J. W. Langford as the original source. Prior to any of the conveyances through which plaintiff claimed, Langford had executed to J. W. Lynch the oil lease under which the well in controversy was finally drilled. That lease contained these provisions:

"In consideration of the premises the said lessee covenants and agrees:

"1. To deliver to the credit of lessor free of cost in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises. * * *

"If the estate of either party hereto is assigned and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or a true copy thereof. * * *"

The lease further contained a general warranty of title to the lessee.

The deeds of conveyance through which plaintiff claims were all executed subsequent-

ly to that lease, and the same had been duly recorded in the records of deeds of Eastland county where the land was located, and each and every one of those conveyances stipulated that they were made subject to the lease theretofore executed by Langford to Lynch and noted above.

Upon the trial it was agreed by counsel for plaintiff that no notice was ever given to the pipe line company of any conveyance from Langford of the royalties reserved by him in his lease to Lynch. The evidence further shows without controversy that all the oil produced by the pipe line company from the lease in controversy was run in a pipe line which was connected with the well, and the pipe line company then paid to Langford the one-eighth royalty originally reserved in the lease, for one-half of which plaintiff sued up to the time it began paying the same. The evidence further showed without controversy that, at the time the pipe line company so made those payments to Langford, it had no actual notice that plaintiff claimed any interest in the royalties, and that, as soon as he notified the company of his interest and demanded payment of one-half of the royaltes, his demand was complied with, and thereafter the pipe line company delivered to him 417.73 barrels of oil of the value of $2 a barrel. And Langford's plea over against the plaintiff and the pipe line company was to recover for that oil on claim of ownership thereof, and which it was alleged had been converted by plaintiff and said company.

Since plaintiff took title with the express stipulation that it was subject to the terms of the original lease from Langford to Lynch, and since that lease expressly stipulated and required the lessee and his assignee to pay the one-eighth royalty to Langford, to the exclusion of any of Langford's assignces, unless and until the service of notice of such assignment upon the lessee, and since it was admitted no such notice was given by Jackson, we conclude that Jackson was bound by that stipulation in the lease to Lynch and showed no right of recovery against the pipe line company under the facts above related. Under those facts it could not be said that the pipe line company wrongfully converted the oil, the title to which plaintiff laid claim and for the alleged conversion of which he sought a recovery. And, in the absence of proof of a wrongful conversion by the pipe line company, Langford's plea of privilege as against plaintiff's suit should have been sustained.

Langford's deed with warranty of title carried with it the right in the grantee and his subsequent assignee's title to his royalty interest in the oil thereafter produced from the land so conveyed, and he held any royalties thereafter collected by him from that land as trustee in equity, for the owner of such royalties, and was liable to such owner therefor.

The tort alleged in plaintiff's petition was the joint tort of Langford and the pipe line company, but in the opening of his case, both on the plea of privilege and the merits, he introduced in evidence the lease to Lynch with the stipulation therein requiring the lessee and his assigns to pay the royalties to Langford until service of notice on the lessee of any assignment of the lease to others thereafter made and through whom he claimed title, and reciting that those conveyances were made subject to the terms of the lease to Lynch. And plaintiff not only failed to prove any notice to the pipe line company of any assignment of the lease by Langford, but admitted upon the trial that no such notice had been given. It thus appears that plaintiff failed to prove, even prima facie, that the pipe line company had committed the fraud alleged in Tarrant county or elsewhere, either alone or jointly with Langford, and therefore failed to overcome Langford's plea of privilege, even if it should be said that the decisions cited by plaintiff are of controlling effect, such as Edmonds v. White (Tex. Civ. App.) 226 S.W. 819; Kelly v. Britton (Tex. Civ. App.) 240 S. W. 1114; Griffin v. Linn (Tex. Civ. App.) 3 S.W.(2d) 148; Higginbotham-Bailey-Logan Co. v. Hancock (Tex. Civ. App.) 4 S.W.(2d) 583; McKee v. McKee (Tex. Civ. App.) 12 S.W.(2d) 849. And in this connection we will add that there is no merit in the contention that the pipe line company was charged with constructive notice of the recorded deeds through which plaintiff claimed title. The registration statutes were enacted for the purpose of giving notice to the world of claim of title through instruments subject to registration, and for the protection of the interests of such persons. But such statutes do not deprive such persons of the right to waive such protection by a valid contract expressly providing that others dealing with the property shall be chargeable with notice of the instruments in the event only they are served with written notice thereof, and that until such notice is served they may act as though no such instruments have been executed.

In Coalson v. Holmes, 111 Tex. 502, 240 S. W. 896, 898, our Supreme Court in an opinion by Justice Greenwood, said: "To deprive a defendant of the right of trial in the county of his domicile, the case against him must be within an exception to article 1830 of the Revised Statutes. With the venue challenged, under proper plea, by one sued without his county, as shown by the plaintiff's pleading, or by proof, the burden not only to allege but to prove that the case is within one of the exceptions to the statute rests on the plaintiff. Pecos & N. T. Ry. Co. v. Thompson, 106 Tex. 460, 167 S.W. 801; Hilliard Bros. v.

Wilson, 76 Tex. 184, 13 S.W. 25; Durango Land & Timber Co. v. Shaw (Tex. Civ. App.) 165 S.W. 490; Cloyd v. Sacra (Tex. Civ. App.) 175 S.W. 456; Graves v. McCollum & Lewis (Tex. Civ. App.) 193 S.W. 217."

In Richardson v. Cage Co., 113 Tex. 152, 252 S. W. 747, 749, plaintiff Cage Company instituted suit in Harris county against the American Railway Express Company, having its principal office in that county, and J. F. Richardson, a resident citizen of Liberty county, who pleaded his privilege to be sued in that county. Plaintiff attempted to overcome that plea on the theory that his suit was for a wrongful joint conversion of goods by both defendants, and therefore it could be maintained in Harris county where the express company had its principal office. The court held that the allegations in plaintiff's petition were insufficient to show the defendants to be joint tort-feasors, and that Richardson's plea of privilege should have been sustained, but further said: "Without undertaking to establish a rule as to the general burden of proof under the provisions of article 1903 of the statutes, where the plea of privilege has been controverted by the plaintiff, we will state that there are numerous decisions to the effect that in cases where the plaintiff seeks to maintain his suit against a defendant outside the county of his residence under certain exceptions to article 1830, among which is included exception 4, it is required of him to allege and prove the facts necessary to clearly bring his case under the particular exception claimed by him as authority for the action. As to exception 4: First Nat. Bank of Bowie v. Bulls (Tex. Civ. App.) 243 S. W. 577. As to exception 5: Gensberg v. Neely (Tex. Civ. App.) 187 S. W. 247. As to exception 7: Coalson v. Holmes, 111 Tex. 502, 240 S. W. 896; Graves v. McCollum (Tex. Civ. App.) 193 S. W. 217; Durango Land & Timber Co. v. Shaw (Tex. Civ. App.) 165 S. W. 490. As to exception 9: Hilliard v. Wilson, 76 Tex. 184, 13 S. W. 25. As to exception 26: Pecos & N. T. Ry. Co. v. Thompson, 106 Tex. 460, 167 S. W. 801."

In Greenville Gas & Fuel Co. v. Commercial Finance Co., 117 Tex. 124, 298 S. W. 550, 551, by the Commission of Appeals, approved by the Supreme Court, it is said: "When a defendant has duly asserted his statutory privilege of being sued in the county of his domicile, his plea should be sustained unless facts which deprive him of such privilege are proved, as well as pleaded, by his adversary" —citing several decisions of the Supreme Court.

From the foregoing conclusions, it follows that the court erred in overruling Langford's plea of privilege as against plaintiff's suit and in failing to transfer that suit to Kent county; and such transfer would also transfer Langford's cross-action against plaintiff for

417.73 barrels of oil delivered to plaintiff by the pipe line company after demand made by him therefor, under the rule announced in Hickman v. Swain, 106 Tex. 431, 167 S. W. 209.

If as alleged in plaintiff's petition, Langford and the pipe line company were joint tort-feasors, then each of those defendants was liable severally, and a separate action could be brought against each; and the same is true of the cross-action by Langford against the plaintiff, Jackson, and the defendant pipe line company. Both of said causes of action being severable, a transfer of the case as between the plaintiff and Langford to Kent county by reason of the plea of privilege by Langford would not carry with it a transfer of the causes of action alleged by plaintiff against the pipe line company, nor the cross-action by Langford against the same company, even though there had been no trial of the merits of those causes of action. India Tire & Rubber Co. v. Murphy (Tex. Civ. App.) 6 S.W.(2d) 141; Harrison v. Amador (Tex. Civ. App.) 9 S.W.(2d) 279; Standard Acc. Ins, Co. v. Pennsylvania Car Co. (Tex. Civ. App.) 15 S.W.(2d) 1081; Dallas Ry. Co. v. Kimberly (Tex. Civ. App.) 268 S. W. 1054. And especially would that rule be applicable here, since there was a trial of those two alleged causes of action on the merits. As shown already, the trial court held that plaintiff was not entitled to recover of the pipe line company, and further that Langford was not entitled to recover against that company on his cross-action, and the judgment rendered on the merits of those two causes of action has been challenged by assignments of error presented here.

Evidence introduced was sufficient to support both of those judgments. Indeed, the evidence introduced by the plaintiff himself was sufficient to show no right of recovery against the pipe line company. With respect to the cross-action against the pipe line company by Langford, the recorded instruments already noted showed prima facie that the legal title to the 417.73 barrels of oil, for which Langford sought to hold the pipe line company liable, was vested in Jackson, and testimony introduced was sufficient to support a further finding by the trial court that the alleged parol partition agreement by Springer, representing Langford, and Jackson, and on which Langford relied to overcome Jackson's legal title as to that oil, was not in fact made. It follows, therefore, that the judgment of the trial court denying plaintiff the relief prayed for against the pipe line company, and also denying Langford any relief on his cross-action against the same company, should be affirmed; and, since the pipe line company's plea over against Langford was conditioned only upon a judgment being rendered against him in favor of plaintiff, it

follows that the judgment denying the pipe line company any recovery on that cross-action should likewise be affirmed.

For the reasons stated, the judgment of the trial court overruling Langford's plea of privilege to plaintiff's suit and decreeing a recovery by plaintiff against Langford for damages is reversed; and the cause is remanded to that court, with instructions to enter an order transferring the entire case as between plaintiff and defendant Langford to the district court of Kent county, all in accordance with the provisions of the statutes in such cases made and provided; such transfer to be as to those parties only. But the judgment of the trial court denying plaintiff any recovery against the pipe line company and denying any recovery by Langford against the pipe line company on his cross-action, and denying the pipe line company any recovery over against Langford on its cross-action will be affirmed. But the affirmance of those judgments shall be without prejudice to the rights of plaintiff and Langford in the determination of the issues between them to be tried in the district court of Kent county.

### On Motion for Rehearing.

In our opinion now on file this language occurs: "The evidence further shows without controversy that all the oil produced by the pipe line company from the lease in controversy was run in a pipe line which was connected with the well and the pipe line company then paid to Langford the one-eighth royalty originally reserved in the lease, for one-half of which plaintiff sued up to the time it began paying the same."

Through clerical error, the word "produced" appearing in that quotation was used instead of the word "purchased," which was intended to be used. Therefore that portion of the opinion will be so corrected as to substitute therein the word "purchased" for the word "produced." With this correction in our opinion, the appellant Jackson's motion for rehearing is overruled.